UNITED STATES of America,
Plaintiff-Appellee,

v.

Anthony TURZITTI, et al.,
Defendants-Appellants.

No. 76–1434.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 22, 1976.

Decided Jan. 3, 1977.

Rehearing Denied Feb. 18, 1977.

Michael B. Cohen, Gerald M. Werksman, Frederick F. Cohn, Chicago, Ill., for defendants-appellants.

Samuel K. Skinner, U. S. Atty., Robert D. Rose, Sp. Atty., Chicago, Ill., for plaintiff-appellee.

Before CLARK,* Associate Justice, FAIRCHILD, Chief Judge, and HASTINGS, Senior Circuit Judge.

Mr. Justice CLARK:

The appellants, Joel M. Glickman, Randolph L. Riotto and Anthony Turzitti, were convicted by a jury on a one-count indictment charging them with conducting a gambling business unlawful under Illinois law [1] in violation of 18 U.S.C. § 1955.[2] A fourth defendant, Roger Riccio, was acquitted on instruction of the court at the close of the Government's case. Augustus John Lazzerini, Charles P. Naponelli, Vincent Michael Palucci and Hal C. Smith were named as unindicted participants in the gambling business as well.

On appeal, the appellants jointly allege that insufficient evidence exists to support their § 1955 convictions, focusing on the "five man operation" and the "$2,000 gross revenue on any given day" requirements of the statute. Glickman individually asserts that the trial court's instructions regarding lay off bets were erroneous and prejudicial, and also claims that the Government's failure to produce the original notes of its expert witness violated 18 U.S.C. § 3500. Finally, Turzitti claims that the prosecutor made a prejudicial statement concerning the size of the appellants' gambling operation during closing argument. We find no merit in any of the contentions and affirm the judgment.

I.

The appellants concede that each of them was involved in a bookmaking business but contend that there were actually three separate operations, none of which was sufficiently large to come within the interdiction of the Act. Specifically, the appellants urge that when each operation is considered alone, neither the statutory requirement of five persons comprising the gambling business nor $2,000 gross revenue on any given day is satisfied.

In presenting its case, the Government offered proof that the allegedly separate bookmaking operations were fused together through "lay off" bets and "betting lines," with the result that the combined operation

---

* Associate Justice Tom C. Clark, United States Supreme Court (Ret.), is sitting by designation.

1. Illinois Revised Statutes, Chapter 38, §§ 28–1(a)(2); 28–1(a)(10) and 28–1.1(b) and (d).

2. 18 U.S.C. § 1955 provides in part as follows:
   (a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined not more than $20,000 or imprisoned not more then five years, or both.
   (b) As used in this section—
   (1) "illegal gambling business" means a gambling business which—
   (i) is a violation of the law of a State or political subdivision in which it is conducted;
   (ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and
   (iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.
   (2) "gambling" includes but is not limited to pool-selling, bookmaking, maintaining slot machines, roulette wheels or dice tables, and conducting lotteries, policy, bolita or numbers games, or selling chances therein.

more than satisfied the § 1955 requirements.

The evidence presented by the Government was gleaned nearly exclusively from tapes of intercepted telephone conversations between the various parties[3]—the Turzitti operation, composed of Turzitti, Riotto, Naponelli and Palucci, and the Glickman-Smith operation.[4] Conversations between Turzitti and Smith revealed that Smith furnished Turzitti the current handicaps betting lines as well as game results on a daily basis, which information Turzitti relayed to his people (Riotto, Naponelli and Palucci) for the purpose of securing bets. The monitored telephone conversations also showed that Turzitti received wagers which he subsequently placed with Smith along with bets of his own. The Government expert characterized the placing of the Riccio bets as a "lay off" whereby Turzitti passed them on to Smith (Glickman's employee).

The appellants claim that Turzitti acted as a "beard" for Riccio in this regard.[5] However, we note that in a monitored conversation on October 13th after a football game, both Smith and Turzitti spoke of the "lay off bets" that Smith had accepted from Turzitti.[6] And on the next day, Turzitti asked Smith to increase the lay off from "4" ($400) to "5" ($500) because he was "stuck with a dime [$1,000] altogether," to which Smith agreed.[7]

We are of the opinion that these allegedly separate bookmaking operations were linked closely enough to constitute a single bookmaking business. The Fifth Circuit has considered this question in *United States v. Box,* 530 F.2d 1258 (1976). At the suggestion of the appellants, we have studied *Box* and find it very helpful in our decision here. As Judge Goldberg points out:

> In almost every case the question has been whether the exchange of lay off bets, usually in addition to the exchange of line information, could be enough to link two separate bookmaking operations into one business for the purposes of meeting the § 1955 jurisdictional requirement of five participants in one business. The answer has in every case been affirmative—the regular direct exchange of lay off bets and line information can connect otherwise independent gambling op-

---

**3.** It is undisputed that the interceptions were properly authorized, monitored and recorded pursuant to court order, and that the original and duplicate tape recordings agents' logs and composite tape, together with their transcripts and voice identifications accurately reflected the monitored conversations.

**4.** A third bookmaking group was that of Augustus Lazzerini and "Yussi" or "K", both of whom appear on the telephone interceptions of Turzitti and Riotto.

**5.** "Bearding" is an undisclosed agency relationship whereby one bettor (the beard) will place bets for another person from whom the bookmaker will not accept bets directly, usually for credit reasons.

**6.** Now Turzitti says that he was "bearding" for Riccio and could not disclose his true source. However, the jury, as well as the trial judge, found that Turzitti was laying off bets to Smith. We agree.

**7.** On October 13, after the Iowa game, the tape reads:

Hal (Smith): You must have really got it barrelled into you on that Iowa game, huh?

Tony (Turzitti): Got it barrelled into me, huh?

Hal: Well you gave me $15.00 [$1500] worth.

Tony: Yeah. Yeah.

Hal: You must have really caught it there.

Tony: I had, I had about 4 on the game. I went out . . . with another 15 . . . I kept a dime of it . .

Hal: Well, that was about your only good game of the day, right?

Tony: Yeah. What could I do with it? I mean I can't hold 4, you know what I mean . . .

Hal: Yeah.

Tony: I'm not prepared for it. Let's put it that way, that's all.

And on October 14, the monitored tape reads:

Hal: I know, I'd like to hold it at four, if I can.

Tony: I know, but it's possible. I'm stuck. I'm stuck with a dime [$1000] altogether. Why don't you take half? Take one more . . . .

Hal: Alright.

erations . . . into one business. At 1265–6.

He further states:

. . . it seems clear that, at least in this circuit, a professional gambler who accepts bets in the nature of lay off bets and, additionally provides line information to the same bookmaking operation can be convicted as part of that operation under § 1955.

The cases establish, then, that one who accepts lay off bets can be convicted if any of the following factors is also present: . . . evidence that the individual performed any other substantial service for the bookmaker's operation, as, for example, in the supply of line information; or evidence that the individual was conducting his own illegal gambling operation and was regularly exchanging lay off bets with the other bookmakers. At 1266.

■ Viewing the evidence in the light most favorable to the Government, *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), it is clearly sufficient to support the finding that the allegedly separate bookmaking businesses were fused through the exchange of information into one operation, thus satisfying the "5 man" requirement.

■ Insofar as the $2000 gross revenue mandate is concerned, the Government introduced evidence showing that the Turzitti-Glickman operation received a total of $40,638 in wages between October 10 and 22nd. On six days during this period, the daily gross revenue was in excess of $2000. Thus, the requirement is satisfied.

## II.

Here the trial court's instruction on lay off betting is attacked in the second claim of error.

Appellant Glickman proposed the charge initially, taking it verbatim from the one given in *United States v. Schaefer,* 510 F.2d 1307, 1311 (8th Cir. 1975), *cert. denied,* 421 U.S. 978, at n. 5, 95 S.Ct. 1980, 44 L.Ed.2d 470. The trial judge added a 15-word clause to the proposal which we underscore, making it read as follows:

A "lay off" bet is a bet or wager placed by one bookmaker with another bookmaker, *and one example of such a lay off bet is a situation where a bet* is necessitated by an influx of an imbalance of bets and wagers on a given sporting event and which *bet* has the effect of distributing the said bets and wagers, thus minimizing the risk of substantial loss.

Appellants assert that the charge as given turned the definition into merely one example of such a bet, leading the jury to conclude that merely because Turzitti and Smith were both bookmakers, the bets in question were layoffs. They further insist that when combined with an instruction offered by the Government (No. 37), charging that one who makes lay off bets conducts the gambling operation with which he places the bets and one who received such lay off bets and gives line information to other bookmakers conducts the latter operation, the charge was unduly prejudicial.

■ We understand that not every bet between bookmakers need be a lay off. *United States v. McCoy,* 539 F.2d 1050 (5th Cir., filed September 30, 1976); *United States v. Box,* 530 F.2d 1258, 1267 (5th Cir. 1976). But we do not believe it was the intention of the trial judge, when he gave his instruction, to have the jury so conclude. Rather, we believe the purpose of the instruction was to convey to the jury the fact that bookmaking is not a precise science, that while the most common instance of lay off betting occurs when there is an imbalance of bets and wagers on a given sporting event, and while its usual effect is to distribute among various bookmakers the imbalance, thus minimizing the risk of substantial loss to any one bookmaker, one could not say, as a matter of law that such is the only instance of laying off. Moreover, the jury was further instructed:

A professional bookmaker who also bets, who also bets in the course of his business may be included. A "bettor," one who merely places a bet, is not included. And

a mere placing of a bet does not make a person a participant in itself in a gambling enterprise for purposes of satisfying the five or more persons requirement of the offense charged in this case.

We think that this instruction, when read in conjunction with the one complained of by appellants, cures any problem that may have existed.

In any case, we believe the evidence outlined in Part I of this opinion strongly tended to show that Turzitti and Smith considered Turzitti's bets as lay offs and that a guilty verdict was most probable even had appellants' proposed instruction been given.

### III.

▮ The remaining two points of error really need no discussion. Turzitti makes objection to the closing argument of the prosecutor, claiming it to be improper and prejudicial. The portion attacked is as follows:

> Now, you also heard testimony to the effect that in that two weeks there was a total figured up by Mr. Cross, the expert of $40,000 . . . You can use your own common knowledge and your own logic and your common sense and your reason, that's over $1,000,000 a year. Small bookmaker, indeed!

But we must view the argument as a whole. *United States v. Greene,* 497 F.2d 1068 (7th Cir. 1974). The remark was made in rebuttal to the "Mom and Pop operation" that appellants claimed to be operating. Indeed, one of appellants' counsel stated that he was "ashamed for my government that he has wasted your time, that it has wasted money and effort—and has produced a 'mouse'." We believe it to be only fair that the prosecutor be allowed to answer such a charge using only simple arithmetic. It appears to us that the appellants were caught on their own petard.

▮ The final specification of error has to do with the Government's failure to produce notes made contemporaneously by its expert as he was preparing two reports for use in his testimony and of which copies

were furnished appellants. It appears that in analyzing transcripts of 300 such monitored conversations, the expert made some notes and arithmetical calculations. He testified that he put the notes in the form of two reports. Counsel requested production of the notes while the expert was under cross examination, citing 18 U.S.C. § 3500. Appellants have suggested that we examine the notes under *Krilich v. United States,* 502 F.2d 680 (7th Cir. 1974), and we have done so, as did the trial judge. We find it perfectly clear that the appellants were not prejudiced by the failure of the Government to produce the same.

Affirmed.