998 F.2d 1011
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Steve KARAS, Defendant-Appellant.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Ronald N. KARAS, Defendant-Appellant.
 Nos. 92-5718, 92-5726.
 United States Court of Appeals,
Fourth Circuit.
 Argued: May 4, 1993.
Decided: July 2, 1993.
 
 Appeals from the United States District Court for the Northern District of West Virginia, at Wheeling. Frederick P. Stamp, Jr., District Judge. (CR-92-40)
 Argued: Robert A. Yahn, Sr., Yahn & Sims, Wheeling, West Virginia, for Appellant Ronald Karas; John J. Pizzuti, Camilletti, Sacco & Pizzuti, Wheeling, West Virginia, for Appellant Steve Karas.
 Robert H. McWilliams, Jr., Assistant United States Attorney, Wheeling, West Virginia, for Appellee.
 On Brief: David J. Sims, Yahn & Sims, Wheeling, West Virginia, for Appellant Ronald Karas.
 William A. Kolibash, United States Attorney, Wheeling, West Virginia, for Appellee.
 N.D.W.Va.
 AFFIRMED.
 Before RUSSELL and HALL, Circuit Judges, and CLARKE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 The appellants, Steve and Ronald Karas, are two brothers who ran the Body Factory, a "bookie joint"[1] located in Weirton, West Virginia. On January 14, 1990, government agents executed a search warrant and discovered the gambling operation in full swing.
 
 
 2
 The Karases, along with their father Gus Karas,[2] were indicted for the substantive offense of running an illegal gambling enterprise (18 U.S.C. § 1955[3]) and for conspiring to run an illegal gambling enterprise (18 U.S.C. § 371). They pleaded not guilty. At trial, the critical issue was the Body Factory's scope. The Karases argued that it was a small "mom-and-pop" operation falling outside § 1955's five-person minimum. The government sought to prove that it included at least five members and, therefore, was within the statute.[4]
 
 
 3
 The jury found the government's theory of the case to be more persuasive and the Karases were convicted of both counts. At sentencing, the district court found that both Steve and Ronald had "supervised" the conspiracy and enhanced their guidelines offense levels by three pursuant to U.S.S.G. § 3B1.1(b) (allows the defendant's sentence to be enhanced three levels if he acted as a "manager or supervisor" and the criminal activity involved five or more participants). Both Karas brothers received sentences of 1 year and 1 day of imprisonment. They appeal their convictions and sentences.
 
 I.
 
 4
 (Was the district court bound by Jenkins? )
 
 
 5
 The Karases' first argument is that the district court erred by following United States v. Jenkins, 649 F.2d 273, 275 (4th Cir. 1981), in which this court held: "One contact is enough for a lay-off man to become a bookmaker and thus one of the five persons involved in the [illegal gambling] business." The essence of their argument is that Jenkins is contrary to the result reached by the other courts that have considered this issue, all of which require a lay-off man to have "regular contacts" before he may be counted towardss 1955's five-person minimum. See United States v. Grezo, 566 F.2d 854, 859 (2d Cir. 1977) (adopting regular contacts rule); United States v. Avarello, 592 F.2d 1339, 1347 n.11 (5th Cir.) (same), cert. denied, 444 U.S. 844 (1979); United States v. King, 834 F.2d 109, 113 (6th Cir. 1987) (surveys state of the law; adopts regular contacts rule), cert. denied, 485 U.S. 1022 (1988); United States v. Turzitti, 547 F.2d 1003, 1005-06 (7th Cir.) (adopts regular contacts rule), cert. denied, 430 U.S. 969 (1977); United States v. Thomas, 508 F.2d 1200, 1206 (8th Cir.) (implies that regular contacts may be required), cert. denied, 421 U.S. 947 (1975); United States v. Hawthorne, 626 F.2d 87, 91-92 (9th Cir. 1980) (follows Thomas ).
 
 
 6
 Regardless of the approach of these other courts, Jenkins has not been overruled by the Supreme Court or an en banc decision of this Court and is still the law of this Circuit. Therefore, we are bound by its holding that one contact with a lay-off man is sufficient for the purposes of § 1955's five-person minimum. Derflinger v. Ford Motor Co., 866 F.2d 107, 110 (4th Cir. 1989) (the rule in this Circuit is that one panel cannot overrule another panel's published opinion) (citations omitted).
 
 II.
 
 7
 (Sufficiency of the evidence )
 
 
 8
 The Karases make a three-pronged argument that the evidence was insufficient to sustain their convictions. Under the deferential Jackson standard, the jury's verdict must be affirmed if,"after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (citations omitted); see also United States v. Vogt, 910 F.2d 1184, 1193 (4th Cir.), cert. denied, 111 S.Ct. 955 (1991).
 
 
 9
 The Karases' first two arguments, that the government failed to prove their intent to conspire or to commit the substantive gambling offense, are frivolous. Their better argument is that the government failed to adduce sufficient evidence that five people conducted, financed, managed, supervised, directed, or owned part of the illegal gambling business, as required under § 1955.
 
 
 10
 The Karases concede that, for the purposes of § 1955, the government proved that three people (both Karases and Steve Spensky) were members of the Body Factory. Additionally, Gus Karas' involvement was certainly established-both an informant and several bettors placed numerous bets with him. This easily brings him within § 1955 which has been read to proscribe almost any degree of participation in an illegal gambling business, except participation as a mere bettor. Sanabria v. United States, 437 U.S. 54, 70-71 n.26 (1978) (dictum) (refers approvingly to "numerous" cases reading § 1955 broadly); Edward J. Devitt, et al., Federal Jury Practice and Instructions § 47.04 (1990) ("The majority of jurisdictions hold that a person can be considered to 'conduct' a gambling business by performing any act, duty, or function which is necessary or helpful in the operation of that gambling enterprise." (collecting cases)); United States v. Greco, 619 F.2d 635, 638 (7th Cir. 1980) ("[A] person may be found to conduct a gambling business even though he is a mere servant or employee having no part in the management or control of the business and no share in the profits...."); United States v. Merrell, 701 F.2d 53, 54-55 (6th Cir.) (individual who served coffee and acted as a janitor counted towards § 1955's five-person minimum), cert. denied, 463 U.S. 1230 (1983).
 
 
 11
 Finally, although he was never formally identified, the government also introduced evidence that the Karases used a lay-off source to insure their larger bets.[5] Steve Spensky testified that the Karases told him not to worry about large bets because they had"somebody to give it to" and that they could not pay off a big win because they were "waiting on [their] man to bring [the money]."
 
 
 12
 Concededly, these statements could have been mere braggadocio or lies designed to alleviate Spensky's fears that a large bet would not be covered. However, this was a decision for the jury; our role under Jackson is merely to determine whether a reasonable fact finder could have concluded beyond a reasonable doubt that the lay-off man existed. "Viewing the evidence in the light most favorable to the prosecution," Jackson v. Virginia, 443 U.S. at 319, we conclude that the government adduced sufficient evidence for the jury to find that a fifth member of the enterprise existed, and, therefore, the convictions must be sustained.[6]
 
 III.
 
 13
 We find no cause for reversal in the appellants' other assignments of error. The Karases' convictions and sentences are affirmed.
 
 AFFIRMED
 
 
 [1]
 Definitions of the gambling terms used in this opinion can be found in United States v. Box, 530 F.2d 1258, 1260-62 (5th Cir. 1976) and United States v. George, 568 F.2d 1064, 1067 n.4 (4th Cir. 1978)
 
 
 [2]
 On the morning of the trial, Gus Karas pleaded guilty to one count of violating § 1955. Consequently, he is not part of this appeal
 
 
 [3]
 Section 1955 makes it a federal crime to conduct, finance, manage, supervise, direct, or own an illegal gambling enterprise. An illegal gambling enterprise is defined as one that (a) violates the laws of the State in which it is conducted, (b) involves five or more persons who "conduct, finance, manage, supervise, direct, or own" part of the enterprise, and (c) is in continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in a single day. See 18 U.S.C. § 1955(b)(1)
 
 
 [4]
 The government argued that the following persons were members of the Body Factory organization: the appellants; Gus Karas; Steve Spensky, a "numbers writer" who wrote bets and received a 20% commission; an unidentified "lay-off" man; Elva Osaba, who printed the parlay cards and placed several personal bets; and Lou Gresko, a competing bookie with whom the Karases traded information concerning the proper "betting line."
 
 
 [5]
 As stated above, the use of a lay-off man for even a single bet is sufficient to include him within the five-person minimum. Jenkins, 649 F.2d at 275
 
 
 [6]
 Because the government adduced sufficient evidence to meet § 1955's five-person minimum, we are not required to address the Karases' arguments concerning other potential members of their organization as to whom there may or may not have been sufficient evidence. See Griffin v. United States, 112 S.Ct. 466, 470-74 (1991)