# SANABRIA *v.* UNITED STATES

No. 76–1040.   Argued November 8, 1977—Decided June 14, 1978

MARSHALL, J., delivered the opinion of the Court, in which BURGER, C. J., and BRENNAN, STEWART, and POWELL, JJ., joined; in all but n. 23 of which STEVENS, J., joined; and in Parts I, II–A, and III of which WHITE, J., joined. STEVENS, J., filed a concurring opinion, *post*, p. 78. BLACKMUN, J., filed a dissenting opinion, in which REHNQUIST, J., joined, *post*, p. 80.

*Francis J. DiMento* argued the cause and filed briefs for petitioner.

*Frank H. Easterbrook* argued the cause for the United States *pro hac vice.* With him on the brief were *Solicitor General McCree, Assistant Attorney General Civiletti,* and *Sidney M. Glazer.*

Mr. Justice Marshall delivered the opinion of the Court.*

The issue presented is whether the United States may appeal in a criminal case from a midtrial ruling resulting in the exclusion of certain evidence and from a subsequently entered judgment of acquittal. Resolution of this issue depends on the application of the Double Jeopardy Clause of the Fifth Amendment to the somewhat unusual facts of this case.

I

Petitioner was indicted, along with several others, for violating 18 U. S. C. § 1955 (1976 ed.), which makes it a federal offense to conduct, finance, manage, supervise, direct, or own all or part of an "illegal gambling business." § 1955 (a). Such a business is defined as one that is conducted by five or more persons in violation of the law of the place where the business is located and that operates for at least 30 days or earns at least $2,000 in any one day. § 1955 (b)(1).[1] The

---

*Mr. Justice White joins Parts I, II–A, and III of this opinion.

[1] Title 18 U. S. C. § 1955 (1976 ed.) provides in relevant part:

"Prohibition of illegal gambling businesses.

"(a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined not more than $20,000 or imprisoned not more than five years, or both.

"(b) As used in this section—

"(1) 'illegal gambling business' means a gambling business which—

"(i) is a violation of the law of a State or political subdivision in which it is conducted;

"(ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and

single-count indictment here charged in relevant part that the defendants' gambling business involved "accepting, recording and registering bets and wagers on a parimutual [*sic*] number pool and on the result of a trial and contest of skill, speed, and endurance of beast," and that the business "was a violation of the laws of the Commonwealth of Massachusetts, to wit, M. G. L. A. Chapter 271, Section 17." [2]

The Government's evidence at trial showed the defendants to have been engaged primarily in horse betting and numbers betting. At the close of the Government's case, petitioner's counsel, who represented 8 of the 11 defendants, moved for a judgment of acquittal as to all of his clients. Joined by counsel for other defendants, he argued, *inter alia,* that the

---

"(iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

"(2) 'gambling' includes but is not limited to pool-selling, bookmaking, maintaining slot machines, roulette wheels or dice tables, and conducting lotteries, policy, bolita or numbers games, or selling chances therein.

"(3) 'State' means any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States."

[2] The indictment alleged in full:

"From on or about June 1, 1971 and continuing thereafter up to and including November 13, 1971 at Revere, Massachusetts within the District of Massachusetts, [the defendants] did unlawfully, knowingly, and wilfully conduct, finance, manage, supervise, direct and own all and a part of an illegal gambling business, to wit, accepting, recording and registering bets and wagers on a parimutual [*sic*] number pool and on the result of a trial and contest of skill, speed, and endurance of beast, said illegal gambling business; (i) was a violation of the laws of the Commonwealth of Massachusetts, to wit, M. G. L. A. Chapter 271, Section 17, in which place said gambling business was being conducted; (ii) involved five and more persons who conducted, financed, managed, supervised, directed and owned all and a part of said business; (iii) had been in substantially continuous operation for a period in excess of thirty days and had a gross revenue of two thousand dollars ($2,000) in any single day; all in violation of Title 18, United States Code, Sections 1955 and 2."

Government had failed to prove that there was a violation of the state statutory section as alleged in the indictment, since Mass. Gen. Laws Ann., ch. 271, § 17 (West 1970), as construed by the state courts, did not prohibit numbers betting but applied only to betting on "games of competition" such as horse races. The Government responded that "violation of the State law is a jurisdictional element of [the federal] statute" and that "not every [defendant] must be found to be violating this State law." The District Court accepted the Government's theory and denied the defendants' motion, stating that "a defendant to be convicted must '[only] be found to have joined in [the illegal] enterprise in some way."

Petitioner's counsel then sought clarification of whether "the numbers pool allegation [was] still in the case." The court indicated that it was, because counsel had not presented any state-court authority for the proposition that § 17 did not include numbers betting. The court also expressed the view, however, that if petitioner's counsel were correct, "we would have to exclude . . . all of the evidence that has to do with bets o[n] numbers." The Government demurred, arguing that exclusion of the numbers evidence would "not necessarily follow" from acceptance of petitioner's theory.[3] Taking his lead from the court, petitioner's counsel next moved "to strike or limit the evidence." The motion was denied.

After the defendants had rested, the trial judge announced that he was reversing his earlier ruling on the motion to exclude evidence, because he had discovered a Massachusetts

---

[3] When the District Judge asked why exclusion of the numbers evidence "would not necessarily follow," the Government responded:

"Because the Defendants have been charged with operating a gambling business, which is in violation of State law. Now, there's no question that the horse race aspect of it is in violation of State law. There are other aspects to the bets as well, but the violation of State law is merely a jurisdictional element which must be satisfied prior to the initiation of Federal prosecution."

case holding that numbers betting was not prohibited by § 17, but only by § 7 of ch. 271.[4] The court then struck all evidence of numbers betting, apparently because it believed such action to be required by the indictment's failure to set forth the proper section.[5]

At this point counsel moved for a judgment of acquittal as to petitioner alone, arguing that there was no evidence of his connection with horse-betting activities. The Government did not disagree that the evidence was insufficient to show petitioner's involvement with a horse-betting operation, but repeated its earlier argument relating to the "jurisdictional" nature of the state-law violation. The court rejected this contention, stating that the offense had "to be established in the terms that you [the Government] charged it, which was as a violation of § 17" and that petitioner had to be "connected with this operation, and by that I mean a horse operation." The court concluded: "I don't think you've done it." It then granted petitioner's motion for a judgment of acquittal[6] and entered an order embodying this ruling later that day.[7]

The next day the Government moved the court to reconsider both "its ruling . . . striking . . . evidence concerning the operation of an illegal . . . numbers pool" and "its decision granting defendant Thomas Sanabria's motion for judgement

---

[4] *Commonwealth* v. *Boyle,* 346 Mass. 1, 189 N. E. 2d 844 (1963).

[5] The Government did not at this time argue, as it had previously, see n. 3, *supra,* that the numbers evidence was relevant to show "other aspects" of the bets even if it could not be used to prove that the business violated state law. Instead, it urged that the numbers evidence was admissible as proof of "similar acts."

[6] Petitioner has consistently maintained that he properly moved to exclude the numbers evidence as irrelevant to the indictment's characterization of the gambling business; that the District Court properly granted the evidentiary motion, see Tr. of Oral Arg. 12; and that the District Court properly granted petitioner's motion for a judgment of acquittal after excluding the numbers evidence on the grounds of insufficient evidence.

[7] The text of the judgment is quoted *infra,* at 67.

[*sic*] of acquittal." [8] Prompted by the Government's arguments in support of reconsideration, the court asked defense counsel why he had not raised the objection to the indictment's citation of § 17 earlier and what prejudice resulted to petitioner from the failure to cite the proper section. Counsel responded that the objection had not "ripened" until, at the end of the Government's case, the court was asked to take judicial notice of § 17, and that he need not and did not allege actual prejudice. The court denied the motions to reconsider, but indicated that, had it granted the motion to restore the numbers evidence, it also would have vacated the judgment of acquittal. [9] The case against the remaining 10 defendants went to the jury on a theory that the gambling business was engaged in horse betting; all were convicted.

The Government filed a timely appeal "from [the] decision

---

[8] In support of these motions, the Government argued that the failure to cite Mass. Gen. Laws Ann., ch. 271, § 7 (West 1970), in the indictment was a technical defect causing no prejudice to the defendants and subject to correction during trial under Fed. Rule Crim. Proc. 7. See n. 11, *infra*. If the numbers evidence were restored to the case, the Government argued, vacating the judgment of acquittal would be proper, since it had resulted solely from the erroneous exclusion of evidence and since no new trial would be necessary in view of the fact that the jury had not been discharged.

[9] The trial court explained its reasoning as follows:

"If the other motion had been granted, I think, probably, the Motion to Reconsider the Acquittal of Sanabria would be allowed under these new decisions: Wilson, which is in 420 US 332; Jenkins, 420 US 358; and Serfass at 420 US 377, all decided the last term. All of those seem to say if a judgment of acquittal or judgment of dismissal is entered on legal grounds as opposed to containing or importing a finding of fact and the reversal of that decision would not require a new trial, then it may be reversed.

.          .          .          .

"In Fong Foo [v. United States, 369 U. S. 141 (1962)] the jury had been discharged, and it would have been necessary to draw a new jury and start a new trial, and in Jenkins they specifically distinguished Fong Foo from the Wilson-Jenkins-Serfass group . . . ."

and order . . . excluding evidence and entering a judgment of acquittal . . . and . . . denying the Motion for Reconsideration." Conceding that there could be no review of the District Court's ruling that there was insufficient evidence of petitioner's involvement with horse betting, the Government sought a new trial on the portion of the indictment relating to numbers betting.

The Court of Appeals for the First Circuit held first that it had jurisdiction of the appeal. Although the jurisdictional statute, 18 U. S. C. § 3731 (1976 ed.), by its terms authorizes the Government to appeal only from orders "dismissing an indictment . . . as to any one or more counts." [10] the word "count" was "interpret[ed] . . . to refer to any discrete basis for the imposition of criminal liability." 548 F. 2d 1, 5 (1976). Viewing the horse-betting and numbers allegations as "discrete bas[es] of criminal liability" duplicitously joined in a single count, the court characterized the District Court's action as a "dismissal" of the numbers "charge" and an acquittal for insufficient evidence on the horse-betting charge. *Id.*, at 4–5, and n. 4. It concluded that § 3731 authorized an appeal from the "dismissal" of the numbers charge, "if the double jeopardy clause does not bar a future prosecution on this charge." 548 F. 2d, at 5.

Consistent with its above analysis, the court found that petitioner had voluntarily terminated the proceedings on the numbers portion of the count by moving, in effect, to dismiss it. Since the "dismissal" imported no ruling on petitioner's

---

[10] Another provision of § 3731 authorizes the Government to appeal from orders "suppressing or excluding evidence . . . not made after the defendant has been put in jeopardy and before the verdict or finding on [the] indictment." The Government does not contend that the ruling excluding numbers evidence was appealable under this provision. By its plain terms, moreover, this second paragraph of § 3731 does not authorize this appeal, since the ruling excluding evidence occurred after the defendant had been put in jeopardy and before verdict. Cf. *United States* v. *Morrison,* 429 U. S. 1 (1976).

"criminal liability as such," and since petitioner's motion was not attributable to "prosecutorial or judicial overreaching," the court applied the rule permitting retrials after a prosecution is terminated by a defendant's request for a mistrial. *Id.*, at 7–8, citing *United States* v. *Dinitz*, 424 U. S. 600 (1976). There being no double jeopardy bar to a new trial, the court went on to resolve the merits of the appeal in the Government's favor. It held, based on an intervening First Circuit decision,[11] that the District Court had erred in "dismissing" the numbers theory. Accordingly, the judgment of acquittal was "vacated" and the case "remanded so that the government may try defendant on that portion of the indictment that charges a violation of § 1955 based upon numbering [*sic*] activities." 548 F. 2d, at 8.

We granted certiorari, 433 U. S. 907 (1977),[12] limiting our review to the related issues of appealability and double jeopardy.[13] We now reverse.

---

[11] *United States* v. *Morrison*, 531 F. 2d 1089, 1094, cert. denied, 429 U. S. 837 (1976). *Morrison* held a failure to cite Mass. Gen. Laws Ann., ch. 271, § 7 (West 1970), in a similarly worded indictment to be harmless error. Based on *Morrison*, the court below concluded that the indictment was sufficient to give "notice that numbers activity was a basis upon which the government sought to establish criminal liability under § 1955." 548 F. 2d, at 4.

[12] The petition for certiorari was filed one day out of time. The time requirement of this Court's Rule 22 (2) is not jurisdictional, *Schacht* v. *United States*, 398 U. S. 58, 63–65 (1970), and petitioner has filed a motion, supported by affidavits, seeking waiver of this requirement. We now grant petitioner's motion.

[13] The petition for certiorari presented four questions for review, the first three relating to whether the Government's appeal was authorized by statute and not barred by the Double Jeopardy Clause. The fourth question sought review of the Court of Appeals' ruling that the indictment gave sufficient notice of the Government's intent to rely on evidence of numbers betting. Our order limited the grant of certiorari to the first three questions. 433 U. S. 907 (1977). Accordingly, we must assume that the District Court erred in ruling that the indictment did not

## II

In *United States* v. *Wilson,* 420 U. S. 332 (1975), we found that the primary purpose of the Double Jeopardy Clause was to prevent successive trials, and not Government appeals *per se.* Thus we held that, where an indictment is dismissed *after* a guilty verdict is rendered, the Double Jeopardy Clause did not bar an appeal since the verdict could simply be reinstated without a new trial if the Government were successful.[14] That a new trial will follow upon a Government appeal does not necessarily forbid it, however, because in limited circumstances a second trial on the same offense is constitutionally permissible.[15] Appealability in this case therefore turns on whether the new trial ordered by the court below would violate the command of the Fifth Amendment that no "person [shall] be subject for the same offence to be twice put in jeopardy of life or limb." [16]

---

encompass the numbers allegation because of its failure to cite Mass. Gen. Laws Ann., ch. 271, § 7 (West 1970).

[14] *United States* v. *Jenkins,* 420 U. S. 358 (1975), by contrast, held that appeal of an order dismissing an indictment after jeopardy had attached, but before verdict, was barred because a successful appeal would require "further proceedings . . . devoted to the resolution of factual issues going to the elements of the offense charged." *Id.,* at 370. See *Lee* v. *United States,* 432 U. S. 23, 29–30 (1977).

[15] A new trial is permitted, *e. g.,* where the defendant successfully appeals his conviction, *United States* v. *Ball,* 163 U. S. 662, 672 (1896); where a mistrial is declared for a "manifest necessity," *Wade* v. *Hunter,* 336 U. S. 684 (1949); where the defendant requests a mistrial in the absence of prosecutorial or judicial overreaching, *United States* v. *Dinitz,* 424 U. S. 600 (1976); or where an indictment is dismissed at the defendant's request in circumstances functionally equivalent to a mistrial, *Lee* v. *United States, supra.* See also *Jeffers* v. *United States,* 432 U. S. 137 (1977).

[16] We have on several occasions observed that the jurisdictional statute authorizing Government appeals, 18 U. S. C. § 3731 (1976 ed.), was "'intended to remove all statutory barriers'" to appeals from orders terminating prosecutions. *United States* v. *Martin Linen Supply Co.,* 430 U. S. 564, 568 (1977), quoting *United States* v. *Wilson,* 420 U. S. 332, 337 (1975). We therefore turn immediately to the constitutional issues.

In deciding whether a second trial is permissible here, we must immediately confront the fact that petitioner was acquitted on the indictment. That " '[a] verdict of acquittal . . . [may] not be reviewed . . . without putting [the defendant] twice in jeopardy, and thereby violating the Constitution,' " has recently been described as "the most fundamental rule in the history of double jeopardy jurisprudence." *United States* v. *Martin Linen Supply Co.*, 430 U. S. 564, 571 (1977), quoting *United States* v. *Ball*, 163 U. S. 662, 671 (1896). The fundamental nature of this rule is manifested by its explicit extension to situations where an acquittal is "based upon an egregiously erroneous foundation." *Fong Foo* v. *United States,* 369 U. S. 141, 143 (1962); see *Green* v. *United States,* 355 U. S. 184, 188 (1957). In *Fong Foo* the Court of Appeals held that the District Court had erred in various rulings and lacked power to direct a verdict of acquittal before the Government rested its case.[17] We accepted the Court of Appeals' holding that the District Court had erred, but nevertheless found that the Double Jeopardy Clause was "violated when the Court of Appeals set aside the judgment of acquittal and directed that petitioners be tried again for the same offense." 369 U. S., at 143. Thus when a defendant has been acquitted at trial he may not be retried on the same offense, even if the legal rulings underlying the acquittal were erroneous.

The Government does not take issue with these basic principles. Indeed, it concedes that the acquittal for insufficient evidence on what it refers to as the horse-betting theory of liability is unreviewable and bars a second trial on that charge.[18] The disputed question, however, is whether a retrial

---

[17] *In re United States,* 286 F. 2d 556 (CA1 1961).

[18] It is without constitutional significance that the court entered a judgment of acquittal rather than directing the jury to bring in a verdict of acquittal or giving it erroneous instructions that resulted in an acquittal. *United States* v. *Martin Linen Supply Co., supra,* at 567 n. 5, 573; *United States* v. *Sisson,* 399 U. S. 267, 290 (1970).

on the numbers theory of liability would be on the "same offense" as that on which petitioner has been acquitted.

The Government contends, in accordance with the reasoning of the Court of Appeals, that the numbers theory was dismissed from the count before the judgment of acquittal was entered and therefore that petitioner was not acquitted of the numbers theory. Petitioner responds that the District Court did not "dismiss" anything but rather struck evidence and acquitted petitioner on the entire count; further, assuming *arguendo* that there was a "dismissal" of the numbers theory, he urges that a retrial on this theory would nevertheless be barred as a second trial on the same statutory offense. We first consider whether the Court of Appeals correctly characterized the District Court's action as a "dismissal" of the numbers theory.

## A

In the Government's view, the numbers theory was "dismissed" from the case as effectively as if the Government had actually charged the crime in two counts and the District Court had dismissed the numbers count. The first difficulty this argument encounters is that the Government did not in fact charge this offense in two counts. Legal consequences ordinarily flow from what has actually happened, not from what a party might have done from the vantage of hindsight. See *Central Tablet Mfg. Co. v. United States*, 417 U. S. 673, 690 (1974).[19] The precise manner in which an indictment

---

[19] The difficulty in allowing a defendant's rights to turn on what the Government might have done is illustrated by considering that, had the Government alleged each "theory of liability" in a separate count, the indictment would have been subject to objection on grounds of multiplicity, the charging of a single offense in separate counts. See n. 20, *infra*. The Government might then have been forced to elect on which count it would proceed against petitioner, *United States v. Universal C. I. T. Credit Corp.*, 344 U. S. 218 (1952), and probably would have chosen to proceed on the numbers theory as to which its evidence was apparently stronger. In that

is drawn cannot be ignored, because an important function of the indictment is to ensure that, "in case any other proceedings are taken against [the defendant] for a similar offence, . . . the record [will] sho[w] with accuracy to what extent he may plead a former acquittal or conviction." *Cochran* v. *United States,* 157 U. S. 286, 290 (1895), quoted with approval in *Russell* v. *United States,* 369 U. S. 749, 764 (1962); *Hagner* v. *United States,* 285 U. S. 427, 431 (1932).[20]

With regard to the one count that was in fact charged, as to which petitioner has been at least formally acquitted, we are not persuaded that it is correct to characterize the trial court's action as a "dismissal" of a discrete portion of the count. While form is not to be exalted over substance in determining the double jeopardy consequences of a ruling terminating a prosecution, *Serfass* v. *United States,* 420 U. S. 377, 392–393 (1975); *United States* v. *Jorn,* 400 U. S. 470, 478 n. 7 (1971); *United States* v. *Goldman,* 277 U. S. 229, 236 (1928), neither is it appropriate entirely to ignore the form of order entered by the trial court, see *United States* v. *Barber,* 219 U. S. 72, 78 (1911). Here the District Court issued only two orders, one excluding certain evidence and the other entering a judgment of acquittal on the single count charged. No language in the indictment was ordered to be stricken, compare *United States* v. *Alberti,* 568 F. 2d 617, 621 (CA2 1977), nor was the indictment amended. The judgment of acquittal was entered on the entire count and found petitioner not guilty of

event, however, petitioner could not have been acquitted of the horse-betting count, and the instant problem would not have arisen.

[20] The Court of Appeals erred in its apparent view that the Government should have drawn the indictment in two counts because the single count was duplicitous. 548 F. 2d, at 5 n. 4. Only a single gambling business was alleged, and hence only a single offense. See *infra,* at 70–71. A single offense should normally be charged in one count rather than several, even if different means of committing the offense are alleged. See Fed. Rule Crim. Proc. 7 (c)(1); Advisory Committee's Notes on Fed. Rule Crim. Proc. 7, 18 U. S. C. App., p. 1413 (1976 ed.); n. 19, *supra.*

the crime of violating 18 U. S. C. § 1955 (1976 ed.), without specifying that it did so only with respect to one theory of liability:

> "The defendant having been set to the bar to be tried for the offense of unlawfully engaging in an illegal gambling business, in violation of Title 18, United States Code, Sections 1955 and 2, and the Court having allowed defendant's motion for judgment of acquittal at the close of government's evidence,
>
> "It is hereby ORDERED that the defendant Thomas Sanabria be, and he hereby is, acquitted of the offense charged, and it is further ORDERED that the defendant Thomas Sanabria is hereby discharged to go without day."

The Government itself characterized the District Court's ruling from which it sought to appeal as "a decision and order . . . excluding evidence and entering a judgment of acquittal." Notice of Appeal.[21] Similar language appears in

---

[21] The Court of Appeals might have been warranted in dismissing the appeal for failure of the notice to specify the only arguably appealable ruling rendered below. The court believed that "[t]he critical ruling by the district court was that the indictment failed to charge a violation of § 1955 on a numbers theory." 548 F. 2d, at 5 n. 5. But this "critical ruling," which the court below concluded was a "dismissal," is not set forth in the notice of appeal. Since the Government is not authorized to appeal from all adverse rulings in criminal cases, it is especially important that it specify precisely what it claims to have been the appealable ruling.

The Court of Appeals, however, must have concluded that the notice was sufficient to bring up for review the legal ruling preceding the order excluding evidence. A mistake in designating the judgment appealed from is not always fatal, so long as the intent to appeal from a specific ruling can fairly be inferred by probing the notice and the other party was not misled or prejudiced. *Daily Mirror, Inc.* v. *New York News, Inc.*, 533 F. 2d 53 (CA2 1976) (*per curiam*); *Jones* v. *Nelson*, 484 F. 2d 1165 (CA10 1973). The Government's "Designation of Issue [*sic*] on Appeal," apparently filed after the notice, did set forth that "[t]he trial judge erred in ruling that M. G. L. A. Chapter 271, Section 17 does not encompass an illegal numbers operation and as a result erred in granting the Motion to Strike and the Motion for Judgment of Acquittal."

its motion for reconsideration filed in the District Court. Indeed, the view that the trial court "dismissed" as to one "discrete basis of liability" appears to have originated in the opinion below. Thus, not only defense counsel and the trial court but the Government as well seemed in agreement that the trial court had made an evidentiary ruling based on its interpretation of the indictment.

We must assume that the trial court's interpretation of the indictment was erroneous. See n. 13, *supra.* But not every erroneous interpretation of an indictment for purposes of deciding what evidence is admissible can be regarded as a "dismissal." Here the District Court did not find that the count failed to charge a necessary element of the offense, cf. *Lee* v. *United States,* 432 U. S. 23 (1977); rather, it found the indictment's description of the offense too narrow to warrant the admission of certain evidence. To this extent, we believe the ruling below is properly to be characterized as an erroneous evidentiary ruling,[22] which led to an acquittal for insufficient

---

[22] The District Court's interpretation of the indictment as not encompassing a charge that the gambling business engaged in numbers betting in violation of state law did not by itself require that numbers evidence be excluded. Even if the indictment had charged only that the defendants had conducted an illegal gambling business engaged in horse-betting activities in violation of state law, evidence relating to numbers betting would have been admissible, absent actual surprise or prejudice, to show the defendants' connection with "all or part of [that] illegal gambling business." 18 U. S. C. § 1955 (a) (1976 ed.). As the Government repeatedly argued to the District Court, the violation of state law is a jurisdictional element which need only be proved with respect to the business.

The District Court's erroneous assumption that the numbers evidence had to be excluded may have resulted in part from the Government's failure to repeat in full its earlier argument, see *supra,* at 58, when the judge ruled that § 17 did not encompass numbers betting, see *supra,* at 58–59. See n. 5, *supra.* Had the numbers evidence not been excluded, the judgment of acquittal would not have been entered, even if the court adhered to its ruling on the scope of the indictment, and the case would have gone to the jury, presumably with instructions that the jurors had to find the

evidence. That judgment of acquittal, however erroneous, bars further prosecution on any aspect of the count and hence bars appellate review of the trial court's error. *United States* v. *Martin Linen Supply Co.*, 430 U. S., at 571; *Fong Foo* v. *United States,* 369 U. S. 141 (1962); *Green* v. *United States,* 355 U. S., at 188; *United States* v. *Ball,* 163 U. S., at 671.

## B

Even if the Government were correct that the District Court "dismissed" the numbers allegation, in our view a retrial on that theory would subject petitioner to a second trial on the "same offense" of which he has been acquitted.[23]

It is Congress, and not the prosecution, which establishes and defines offenses. Few, if any, limitations are imposed by the Double Jeopardy Clause on the legislative power to define offenses. *Brown* v. *Ohio,* 432 U. S. 161, 165 (1977). But once Congress has defined a statutory offense by its prescription of the "allowable unit of prosecution," *United States* v. *Universal C. I. T. Credit Corp.,* 344 U. S. 218, 221

gambling business to have engaged in horse betting, and the defendants to have conducted "all or part" of that gambling business.

[23] We agree with the Court of Appeals, see *supra,* at 61, that there is no statutory barrier to an appeal from an order dismissing only a portion of a count. One express purpose of 18 U. S. C. § 3731 (1976 ed.) is to permit appeals from orders dismissing indictments "as to any one or more counts." A "count" is the usual organizational subunit of an indictment, and it would therefore appear that Congress intended to authorize appeals from any order dismissing an indictment in whole or in part. Congress could hardly have meant appealability to depend on the initial decision of a prosecutor to charge in one count what could also have been charged in two, a decision frequently fortuitous for purposes of the interests served by § 3731. To so rule would import an empty formalism into a statute expressly designed to eliminate "[t]echnical distinctions in pleadings as limitations on appeals by the United States." H. R. Conf. Rep. No. 91–1768, p. 21 (1970); accord, S. Rep. No. 91–1296, p. 5 (1970). We note that the only Court of Appeals other than the court below that has considered this question reached a similar result. *United States* v. *Alberti,* 568 F. 2d 617 (CA2 1977).

(1952); *Bell* v. *United States,* 349 U. S. 81 (1955); *Braverman* v. *United States,* 317 U. S. 49 (1942); *In re Nielsen,* 131 U. S. 176 (1889), that prescription determines the scope of protection afforded by a prior conviction or acquittal. Whether a particular course of conduct involves one or more distinct "offenses" under the statute depends on this congressional choice.[24]

The allowable unit of prosecution under § 1955 is defined as participation in a single "illegal gambling business." Congress did not assimilate state gambling laws *per se* into the federal penal code, nor did it define discrete acts of gambling as independent federal offenses. See H. R. Rep. No. 91–1549, p. 53 (1970). See also *Iannelli* v. *United States,* 420 U. S. 770, 784–790 (1975). The Government need not prove that the defendant himself performed any act of gambling prohibited by state law.[25] It is participation in the gambling business that is a federal offense, and it is only the gambling business that must violate state law.[26] And, as the Government recog-

---

[24] See Note, Twice in Jeopardy, 75 Yale L. J. 262, 268, 302–310 (1965). Because only a single violation of a single statute is at issue here, we do not analyze this case under the so-called "same evidence" test, which is frequently used to determine whether a single transaction may give rise to separate prosecutions, convictions, and/or punishments under separate statutes. See, *e. g., Gavieres* v. *United States,* 220 U. S. 338, 342 (1911); *Blockburger* v. *United States,* 284 U. S. 299 (1932); *Gore* v. *United States,* 357 U. S. 386 (1958); *Iannelli* v. *United States,* 420 U. S. 770 (1975). See also *Brown* v. *Ohio,* 432 U. S. 161, 166–167, n. 6 (1977); *United States* v. *Jones,* 533 F. 2d 1387 (CA6 1976), cert. denied, 431 U. S. 964 (1977). Nor is the case controlled by decisions permitting prosecution under statutes defining as the criminal offense a discrete act, after a prior conviction or acquittal of a distinguishable discrete act that is a separate violation of the statute. See, *e. g., Ebeling* v. *Morgan,* 237 U. S. 625 (1915); *Burton* v. *United States,* 202 U. S. 344 (1906). Cf. *Ladner* v. *United States,* 358 U. S. 169 (1958); *Bell* v. *United States,* 349 U. S. 81 (1955).

[25] *United States* v. *Hawes,* 529 F. 2d 472, 478 (CA5 1976).

[26] Numerous cases have recognized that 18 U. S. C. § 1955 (1976 ed.) proscribes any degree of participation in an illegal gambling business,

nizes, under § 1955 participation in a single gambling business is but a single offense, "no matter how many state statutes the enterprise violated." Brief for United States 31.

The Government's undisputed theory of this case is that there was a single gambling business, which engaged in both horse betting and numbers betting. With regard to this single business, participation in which is concededly only a single offense, we have no doubt that petitioner was truly acquitted.

We have recently defined an acquittal as " 'a resolution, correct or not, of some or all of the factual elements of the offense charged.' " *Lee* v. *United States*, 432 U. S., at 30 n. 8, quoting *United States* v. *Martin Linen Supply Co., supra,* at 571. Petitioner was found not guilty for a failure of proof on a key "factual element of the offense charged": that he was "connected with" the illegal gambling business. See *supra,* at 59.[27] Had the Government charged only that the business

---

except participation as a mere bettor. See, *e. g., United States* v. *DiMuro,* 540 F. 2d 503, 507–508 (CA1 1976), cert. denied, 429 U. S. 1038 (1977); *United States* v. *Leon,* 534 F. 2d 667, 676 (CA6 1976); *United States* v. *Brick,* 502 F. 2d 219, 225 n. 17 (CA8 1974); *United States* v. *Smaldone,* 485 F. 2d 1333, 1351 (CA10 1973), cert. denied, 416 U. S. 936 (1974); *United States* v. *Hunter,* 478 F. 2d 1019, 1021–1022 (CA7), cert. denied, 414 U. S. 857 (1973); *United States* v. *Ceraso,* 467 F. 2d 653, 656 (CA3 1972); *United States* v. *Becker,* 461 F. 2d 230, 232–233 (CA2 1972), vacated on other grounds, 417 U. S. 903 (1974). Similarly, the Government need not prove that each defendant participated in an illegal gambling business for more than 30 days (or grossed more than $2,000 in a single day), but only that the business itself existed for more than 30 days (or met the earnings criteria). *United States* v. *Graham,* 534 F. 2d 1357, 1359 (CA9 1976) (*per curiam*); *United States* v. *Marrifield,* 515 F. 2d 877, 880–881 (CA5 1975); *United States* v. *Schaefer,* 510 F. 2d 1307, 1312 (CA8), cert. denied *sub nom. Del Pietro* v. *United States,* 421 U. S. 975 (1975); *United States* v. *Smaldone, supra,* at 1351; see *United States* v. *DiMario,* 473 F. 2d 1046, 1048 (CA6), cert. denied, 412 U. S. 907 (1973).

[27] The court's finding that petitioner was not "connected with" the gambling business necessarily meant that he was found not to conduct, finance, manage, supervise, direct, or own it. See 18 U. S. C. § 1955 (a) (1976 ed.).

was engaged in horse betting and had petitioner been acquitted, his acquittal would bar any further prosecution for participating in the *same* gambling business during the same time period on a numbers theory.[28]  That the trial court disregarded the Government's allegation of numbers betting does not render its acquittal on the horse-betting theory any less an acquittal on the "offense" charged.  "The Double Jeopardy Clause is not such a fragile guarantee that . . . its limitations [can be avoided] by the simple expedient of dividing a single crime into a series of temporal or spatial units," *Brown* v. *Ohio,* 432 U. S., at 169, or, as we hold today, into "discrete bases of liability" not defined as such by the legislature.  See *id.,* at 169 n. 8.[29]

While recognizing that only a single violation of the statute is alleged under either theory,[30] the Government nevertheless contends that separate counts would have been proper, and that an acquittal of petitioner on a horse-betting count would not bar another prosecution on a numbers count.  Brief for United States 33.  Although there may be circumstances in which this is true, petitioner here was acquitted for insufficient proof of an element of the crime which both such counts would share—that he was "connected with" the single gambling business.  See *supra,* at 59.  This finding of fact stands as an

---

[28] See 1 C. Wright, Federal Practice and Procedure § 125, p. 241 (1969). See also *United States* v. *Sabella,* 272 F. 2d 206, 211 (CA2 1959) (Friendly, J.); *Hanf* v. *United States,* 235 F. 2d 710, 715 (CA8), cert. denied, 352 U. S. 880 (1956).

[29] See also *United States* v. *Jackson,* 560 F. 2d 112, 121 n. 9 (CA2 1977) (Government may not, under Double Jeopardy Clause, "fragment what is in fact a single crime into its components").

[30] The Government concedes that it was required to bring all "theories of liability" in a single trial, and that only a single punishment could be imposed upon conviction on more than one such theory.  Brief for United States 31, 33.

absolute bar to any further prosecution for participation in that business.[31]

The Government having charged only a single gambling business, the discrete violations of state law which that business may have committed are not severable in order to avoid the Double Jeopardy Clause's bar on retrials for the "same offense." [32] Indeed, the Government's argument that these are discrete bases of liability warranting reprosecution following a final judgment of acquittal on one such "discrete basis" is quite similar to an unsuccessful argument that it presented in *Braverman* v. *United States,* 317 U. S. 49 (1942). Braverman had been convicted of and received consecutive sentences on four separate counts of conspiracy, each count alleging a conspiracy to violate a separate substantive provision of the federal narcotics laws. The Government conceded that only a single conspiracy existed, as it concedes here that only a single gambling business existed; nonetheless, it urged that separate punishments were appropriate because the single conspiracy had several discrete objects. We firmly rejected that argument:

> "[T]he precise nature and extent of the conspiracy must be determined by reference to the agreement which embraces and defines its objects. Whether the object of a single agreement is to commit one or many crimes, it is in

[31] It is true that no factual determination was made that petitioner had not engaged in numbers betting. Thus, there would be no collateral-estoppel bar to a prosecution of petitioner for a different offense in which his liability would depend on proof of that fact. Cf. *Ashe* v. *Swenson,* 397 U. S. 436 (1970).

[32] A single gambling business theoretically may violate as many laws as a State has prohibiting gambling, and § 1955 specifies six means by which a defendant may illegally participate in such a business, *i. e.,* by conducting, financing, managing, supervising, directing, or owning it. If we were to accept the Government's theory, each of these could be varied, one at a time, to charge a separate count on which a defendant could be reprosecuted following acquittals on any of the others.

either case that agreement which constitutes the conspiracy which the statute punishes. The one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one." *Id.*, at 53.

The same reasoning must also apply where the essence of the crime created by Congress is participation in a "business," rather than participation in an "agreement." [33]

The Double Jeopardy Clause is no less offended because the Government here seeks to try petitioner twice for this single offense, instead of seeking to punish him twice as it did in *Braverman*.[34] "If two offenses are the same . . . for purposes of barring consecutive sentences at a single trial, they necessarily will be the same for purposes of barring successive prosecutions." *Brown* v. *Ohio, supra,* at 166. Accordingly, even if the numbers allegation were "dismissed," we conclude that a subsequent trial of petitioner for conducting the same illegal gambling business as that at issue in the first trial would subject him to a second trial on the "same offense" of which he was acquitted.

---

[33] If two *different* gambling businesses were alleged and proved, separate convictions and punishments would be proper. See *American Tobacco Co.* v. *United States,* 328 U. S. 781, 787–788 (1946) (holding *Braverman* inapplicable where two distinct conspiracies alleged). It is not always easy to ascertain whether one or more gambling businesses have been proved under § 1955. See, *e. g., United States* v. *DiMuro,* 540 F. 2d, at 508–509; *United States* v. *Bobo,* 477 F. 2d 974, 988 (CA4 1973). No such difficulties are presented here because both sides agree that only a single gambling business existed.

[34] *United States* v. *Tanner,* 471 F. 2d 128, 141 n. 21 (CA7), cert. denied, 409 U. S. 949 (1972); see *United States* v. *Mayes,* 512 F. 2d 637, 652 (CA6), cert. denied, 422 U. S. 1008 (1975); *United States* v. *Young,* 503 F. 2d 1072, 1075 (CA3 1974); *United States* v. *Cohen,* 197 F. 2d 26 (CA3 1952). See also *Short* v. *United States,* 91 F. 2d 614 (CA4 1937); *Powe* v. *United States,* 11 F. 2d 598 (CA5 1926); *United States* v. *Weiss,* 293 F. 992 (ND Ill. 1923).

## III

The only question remaining is whether any of the exceptions to the constitutional rule forbidding successive trials on the same offense, see n. 15, *supra,* apply here. The short answer to this question is that there is no exception permitting retrial once the defendant has been acquitted, no matter how "egregiously erroneous," *Fong Foo* v. *United States,* 369 U. S., at 143, the legal rulings leading to that judgment might be. The Government nevertheless argues, relying principally on *Lee* v. *United States,* 432 U. S. 23 (1977), and *Jeffers* v. *United States,* 432 U. S. 137 (1977), that petitioner waived his double jeopardy rights by moving to "dismiss" the numbers allegation and by not objecting to the form of the allegation prior to trial.

In *Lee* we held a retrial permissible because the District Court's midtrial decision granting the defendant's motion to dismiss the indictment for failure to state an offense was "functionally indistinguishable from a declaration of mistrial" at the defendant's request. 432 U. S., at 31. The mistrial analogy relied on in *Lee* is manifestly inapposite here. Although jeopardy had attached in *Lee,* no verdict had been rendered; indeed, petitioner conceded that "the District Court's termination of the first trial was not an acquittal," *id.,* at 30 n. 8. Here, by contrast, the trial proceeded to verdict, and petitioner was acquitted. While in *Lee* the trial court clearly did contemplate a reprosecution when it granted defendant's motion, *id.,* at 30-31, neither petitioner's motion here nor the trial court's rulings contemplated a second trial—nor could they have, since only a single offense was involved and petitioner went to judgment on that offense. Where a trial terminates with a judgment of acquittal, as here, "double jeopardy principles governing the permissibility of retrial after a declaration of mistrial," *Lee* v. *United States,* 432 U. S., at 31, have no bearing.

Nor does *Jeffers* support the Government's position. The

defendant there was first tried and convicted of conspiring to distribute narcotics in violation of 21 U. S. C. § 846. Eight Members of the Court agreed that his subsequent trial for conducting a continuing criminal enterprise in violation of 21 U. S. C. § 848 during the same time period was on the "same offense," since the § 846 violation was a lesser included offense to the § 848 violation. Prior to the first trial, however, Jeffers had specifically opposed the Government's effort to try both indictments together, in part on the ground that they involved distinct offenses. 432 U. S., at 144 n. 8. Reasoning that Jeffers necessarily contemplated a second trial, four Members of the Court found that he had "elect[ed] to have the two offenses tried separately," *id.*, at 152, and, by not raising the potential double jeopardy problem, had waived any objection on that ground to successive trials, *id.*, at 152–154.[35] The instant case presents quite a different situation. Petitioner's counsel never argued that horse betting and numbers were distinct offenses,[36] *a fortiori* did not argue for or contemplate

---

[35] While holding that Jeffers could be subjected to a second trial, these four Justices were of the view that the total punishment imposed on Jeffers could not be in excess of that authorized for a single violation of 21 U. S. C. § 848. They relied in part on the fact that Jeffers, who had argued in the District Court that the two statutes involved distinct offenses, had "never affirmatively argued that the difference in the two statutes was so great as to authorize separate punishments . . . ." 432 U. S., at 154 n. 23. They were joined in voting to vacate the excess punishment by the four Justices who believed that Jeffers could not be constitutionally subjected to another trial. MR. JUSTICE WHITE believed that Jeffers could be subjected to both a second trial and separate punishments.

[36] That no such argument was made as to the numbers and horse-betting allegations is highlighted by the fact that petitioner's counsel did argue on behalf of another defendant that evidence relating to that defendant's betting on dog races should be excluded because

"the theory of the Government's case is that this is a horse and numbers business. . . . [The dog betting] stands by itself as a separate business,

separate trials on each theory, and *a multo fortiori* did not "elect" to undergo successive trials.

Finally, we agree with the Court of Appeals that this case does not present the hypothetical situation on which we reserved judgment in *Serfass* v. *United States,* of " 'a defendant who is afforded an opportunity to obtain a determination of a legal defense prior to trial and nevertheless knowingly allows himself to be placed in jeopardy before raising the defense.' " 420 U. S., at 394, quoting Solicitor General; see 548 F. 2d, at 7. Petitioner did not have a "legal defense" to the single offense charged: participating in an illegal gambling business in violation of § 1955. Unlike questions of whether an indictment states an offense, a statute is unconstitutional, or conduct set forth in an indictment violates the statute, what proof may be presented in support of a valid indictment and the sufficiency of that proof are not "legal defenses" required to be or even capable of being resolved before trial. In all of the former instances, a ruling in the defendant's favor completely precludes conviction, at least on that indictment. Here, even if the numbers language had been struck before trial, there was no "legal" reason why petitioner could not have been convicted on this indictment, as were his 10 codefendants. The acquittal resulted from the insufficiency of the Government's proof at trial to establish petitioner's connection with the gambling business, as the trial judge erroneously understood it to have been charged.

The Government's real quarrel is with the judgment of acquittal. While the numbers evidence was erroneously excluded, the judgment of acquittal produced thereby is final and unreviewable. Neither 18 U. S. C. § 3731 (1976 ed.) nor

_____

and . . . the Government [must] prove one business here. It's like having multiple conspiracy." Record 28–29.

The motion for exclusion was denied because the District Court found that dog betting was part of the single gambling business shown to have been conducted from the office at 63 Bickford Avenue. *Id.,* at 29–30.

the Double Jeopardy Clause permits the Government to obtain relief from all of the adverse rulings—most of which result from defense motions—that lead to the termination of a criminal trial in the defendant's favor. See *United States* v. *Wilson,* 420 U. S., at 351–352; S. Rep. No. 91–1296, p. 2 (1970). To hold that a defendant waives his double jeopardy protection whenever a trial court error in his favor on a mid-trial motion leads to an acquittal would undercut the adversary assumption on which our system of criminal justice rests, see *Jeffers* v. *United States,* 432 U. S., at 159–160 (STEVENS, J., dissenting in part and concurring in judgment in part), and would vitiate one of the fundamental rights established by the Fifth Amendment.

The trial court's rulings here led to an erroneous resolution in the defendant's favor on the merits of the charge. As *Fong Foo* v. *United States* makes clear, the Double Jeopardy Clause absolutely bars a second trial in such circumstances. The Court of Appeals thus lacked jurisdiction of the Government's appeal.

Accordingly, the judgment of the Court of Appeals is

*Reversed.*

MR. JUSTICE STEVENS, concurring.

Although I join the text of the Court's opinion, I cannot agree with the dictum in footnote 23. It is true "that there is no statutory barrier to an appeal from an order dismissing only a portion of a count," *ante,* at 69 n. 23, but it is equally true that there is no statutory *authority* for such an appeal. It necessarily follows—at least if we are faithful to the concept that federal courts have only such jurisdiction as is conferred by Congress—that the Court of Appeals had no jurisdiction of this appeal.

The Criminal Appeals Act, 18 U. S. C. § 3731 (1976 ed.), authorizes the United States to appeal an order of a district

court "dismissing an indictment or information *as to any one or more counts,* except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution." (Emphasis added.) By its plain terms, this statute does not encompass the present case.

Putting to one side the question whether an acquittal may properly be regarded as an order "dismissing an indictment" within the meaning of the statute, see *United States v. Martin Linen Supply Co.,* 430 U. S. 564, 576 (STEVENS, J., concurring), the statutory grant of appellate jurisdiction is still unequivocally limited to review of a dismissal "as to any one or more counts." The statute does not refer to "subunit[s] of an indictment" or "portion[s] of a count," *ante,* at 69 n. 23, but only to "counts," a well-known and unambiguous term of art.

Prior to the amendment of § 3731 in 1971, this Court's rule of statutory interpretation was that "the Criminal Appeals Act [should be] strictly construed against the Government's right of appeal, *Carroll v. United States,* 354 U. S. 394, 399–400 (1957)." *Will v. United States,* 389 U. S. 90, 96–97. The Court's present pattern of interpretation of § 3731, as exemplified by *Martin Linen, supra,* does more than simply abandon this approach; it reverses direction entirely and reads the statute in whatever manner would favor a Government appeal. It is, of course, true that the legislative history of the Act indicates that Congress intended § 3731 "to be liberally construed," S. Rep. No. 91–1296, p. 18 (1970), but this expression of legislative intent does not give us a license to ignore the words of the statute. In fact, the Court does not even suggest that the language "one or more counts" is ambiguous; instead it argues that the words cannot be given their proper meaning because the Act was intended "to eliminate '[t]echnical distinctions in pleadings . . . .'" *Ante,* at 69 n. 23. This argument has a hollow ring in light of the Court's prior assertion

that "[t]he precise manner in which an indictment is drawn cannot be ignored, because an important function of the indictment is to ensure that, 'in case any other proceedings are taken against [the defendant] for a similar offence, . . . the record [will] show with accuracy to what extent he may plead a former acquittal or conviction.' " *Ante,* at 65–66. Furthermore, in my judgment, a rule that the Government may appeal from the "dismissal" of a portion of a count, provided that the portion establishes a "discrete basis of liability," fosters rather than eliminates technical distinctions and encourages exactly the sort of nearsighted parsing of indictments that the amendment was intended to discourage.

I cannot, therefore, join that portion of the Court's decision which states that the Criminal Appeals Act permits an appeal from only a portion of a count. It clearly does not, and for that reason, as well as for the reasons stated in the text of the Court's opinion, the Court of Appeals' decision must be reversed.

MR. JUSTICE BLACKMUN, with whom MR. JUSTICE REHNQUIST joins, dissenting.

This case, of course, is an odd and an unusual one, factually and procedurally. Because it is, the case will afford little guidance as precedent in the Court's continuing struggle to create order and understanding out of the confusion of the lengthening list of its decisions on the Double Jeopardy Clause. I would have thought, however, that the principles enunciated late last Term in *Lee* v. *United States,* 432 U. S. 23 (1977)—which I deem a more difficult case for the Government than this one—had application to the facts here. I do not share the Court's distinction of *Lee, ante,* at 75, and I do not agree that *Lee* is "manifestly inapposite." Here, as in *Lee,* there is misdescription by the trial court of the nature of its order, and, as in *Lee,* the defendant-petitioner's maneu-

vers should result in a surrender of his right to receive a verdict by the jury that had been drawn. Further, it appears to me that petitioner has succeeded in having the indictment read one way in the trial court, and another way here, as the situation required.

I would affirm the judgment of the Court of Appeals.