16 F.3d 1222
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Edward D. PACK, Defendant-Appellant.
 No. 92-3872.
 United States Court of Appeals, Sixth Circuit.
 Jan. 25, 1994.
 
 Before: JONES and NORRIS, Circuit Judges; and CLELAND, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant appeals his conviction for conducting an illegal gambling business. For the reasons stated herein, the conviction is affirmed.
 
 I. PROCEDURAL BACKGROUND
 
 2
 Defendant Edward D. Pack, a police officer, was indicted together with four other individuals for conducting an illegal gambling business in violation of Title 18, United States Code, section 1955 (1984 & Supp.1993).[1] The four co-defendants pleaded guilty, but defendant tested the government's proofs at trial. Defendant's first trial, which ended May 11, 1992, resulted in a hung jury. His second trial resulted in his conviction on June 4, 1992. Defendant was sentenced to serve sixteen months incarceration on August 20, 1992, and began serving his sentence on that date.
 
 II. FACTS
 
 3
 Jack DeSarro, with the assistance of numerous numbers writers, runners, bookies, poker machine operators and poker dealers, operated a widespread gambling business involved with sports bookmaking, illegal numbers lotteries, illegal poker machines and casino-style dice and poker games in and around East Liverpool, Ohio from the late 1970's until June of 1991. In addition, DeSarro operated nightly poker games during the late 1970's at a club known as the "Italian American Club" which he owned and operated in Midland, Pennsylvania, a city 10 miles away from East Liverpool. These nightly poker games were professional-style affairs run by regular, fixed dealers who dealt the cards and cut 5% from each pot for the house. DeSarro received the 5% cut, provided players with complimentary food and beverages and also played in the games. In the early 1980's, as a result of law enforcement pressures created by investigations, the poker games were moved from Midland to East Liverpool. The new club was called the "ItAm Club" (short for Italian-American). At some unspecified point, DeSarro ceased operating the nightly poker games at the ItAm club but continued to operate sports bookmaking, illegal numbers lotteries and illegal poker machines at other bars and clubs in and around East Liverpool. In addition, DeSarro began conducting weekly Sunday night poker games in a building adjacent to his home, which was also located in East Liverpool. These games occurred between 1988 and 1989. In its indictment the government alleged that Pack served as one of DeSarro's regular, fixed dealers at this weekly game in violation of 18 U.S.C. Sec. 1955.
 
 
 4
 Three issues are before the Court: 1) whether the district court correctly denied defendant's motion to dismiss for lack of subject matter jurisdiction, 2) whether sufficient evidence supported defendant's conviction, and 3) whether the district court properly denied defendant's motion to suppress non-custodial statements to special agents of the FBI.
 
 III. DISCUSSION
 Subject Matter Jurisdiction
 
 5
 Defendant's first argument, that the trial court committed reversible error in failing to grant his motion to dismiss for lack of subject matter jurisdiction, is without merit. The heart of defendant's argument is that "if the conduct of a [particular] defendant does not affect interstate commerce, the Federal Court lacks subject matter jurisdiction to hear the case." Contrary to defendant's assertion, the government need not demonstrate an effect on interstate commerce in order to obtain a conviction under 18 U.S.C. Sec. 1955. In United States v. Leon, 534 F.2d 667 (6th Cir.1976), this Court rejected several attacks on the constitutionality of 18 U.S.C. Sec. 1955, including, inter alia, the argument that the presumption contained within Sec. 1955 (i.e. that a gambling business, as defined by the Act, affects interstate commerce) "... lacks a rational connection between the fact proved and the ultimate fact presumed." Id. at 673. In upholding Sec. 1955, the court cited with approval the Ninth Circuit's holding in United States v. Sacco, 491 F.2d 995 (9th Cir.1974) (en banc ). Like the Leon court, the court in Sacco upheld the constitutionality of 18 U.S.C. Sec. 1955. In so doing, the court determined that:
 
 
 6
 If the class of activities is within the reach of the federal power and the regulation imposed is reasonable, a court's investigation is concluded. There is no need for inquiry on a case-by-case basis or proof that a particular activity had an effect on commerce....
 
 
 7
 United States v. Sacco, 491 F.2d at 999 (emphasis added) (citations omitted). See also United States v. Nerone, 563 F.2d 836, 843 (7th Cir.1977) (noting that, by enacting Sec. 1955, Congress "made a judgment that gambling operations involving more than five people and operating in excess of thirty days affect interstate commerce."). This Court holds that the government is not required to demonstrate that the conduct of a particular defendant somehow "affected" interstate commerce in order for the district court to have subject matter jurisdiction under 18 U.S.C. Sec. 1955. Because the class of activities prohibited by 18 U.S.C. Sec. 1955 is within the reach of federal power (and because this Court has previously determined that the regulation imposed is reasonable), this Court's investigation is concluded. United States v. Sacco, 491 F.2d at 999.
 
 Sufficiency of the Evidence
 
 8
 Defendant next argues that there was insufficient evidence to support his conviction. Specifically, defendant maintains that: 1) the weekly poker game that took place at one of the co-defendants' houses (Jack DeSarro) "was simply not the type of activity contemplated by section 1955[,]" and 2) he was merely a player in this "social poker game who took his turn dealing." To convict defendant of a Sec. 1955 violation, the jury was required to find that: 1) DeSarro, together with at least four other persons, operated a gambling business in violation of the gambling laws of the State of Ohio for a period exceeding 30 days and 2) that defendant was one of the persons who helped "conduct" that business. See, e.g., United States v. Clements, 588 F.2d 1030, 1037 (5th Cir.1979), cert. denied, 440 U.S. 982 (1979).[2]
 
 
 9
 In reviewing the sufficiency of the evidence, this Court applies the same legal standard as the district court:
 
 
 10
 Evidence is sufficient to support a criminal conviction if, after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). This court 'will reverse a judgment for insufficiency of evidence only if [the] judgment is not supported by substantial and competent evidence upon the record as a whole, and ... this rule applies whether the evidence is direct or wholly circumstantial.' United States v. Stone, 748 F.2d 361, 363 (6th Cir.1984). It is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt. Adamo, 742 F.2d at 932.
 
 
 11
 United States v. Beddow, 957 F.2d 1330, 1334 (6th Cir.1992).
 
 
 12
 With respect to the first element (i.e. that DeSarro, together with at least four other persons, operated a gambling business in violation of the gambling laws of the State of Ohio for a period exceeding 30 days), defendant asserts that the poker games which took place at Jack DeSarro's house in 1988-89 were "simply not the type of activity contemplated by section 1955." Defendant proffers no evidence and no law to support this assertedly "simple" conclusion. It is not disputed that DeSarro, with the assistance of at least four others, conducted a multi-faceted gambling business which operated sports bookmaking, numbers lotteries, poker machines and poker and dice games for profit between the late 1970's and the late 1980's. Moreover, the evidence further indicates that the East Liverpool poker games that took place between 1988 and 1989 occurred weekly and were of a professional style, just as were the nightly poker games in Midland played at the Italian American Club in the late 1970's, and the games played at the ItAm Club in the late 1980's. The games were played in a building next to DeSarro's house; they featured regular, fixed dealers who dealt the cards and cut 5% of every pot; each of the games was played on a professional Las Vegas-style table that could accommodate between nine and ten players (in addition, the building was equipped with a large, professionally marked dice table which was also used for gambling); the games were attended by many of the same regular players; a buffet-style dinner was provided before each game; there was no betting limit; and there was a "rake" of three to five hundred dollars per night. Defendant offers no evidence to indicate that DeSarro, who continuously operated bookmaking, numbers, poker machines and poker games in which 5% was cut from each pot, for profit, operated the 1988-89 weekly East Liverpool poker games for any reason other than to turn a profit. Under these circumstances, a reasonable jury could find that DeSarro, together with at least four other persons, operated an illegal gambling business in violation of Ohio gambling laws for a period exceeding 30 days.[3]
 
 
 13
 Defendant contends that he was "merely a player ... who took his turn dealing," against a backdrop of evidence showing that he regularly served as a fixed dealer at these games. It is well settled that Sec. 1955 "proscribes any degree of participation in an illegal gambling business except as participation as a mere bettor." United States v. Merrell, 701 F.2d 53, 54 (6th Cir.1983), cert. denied, 463 U.S. 1230 (1983) (emphasis added), citing, Sanabria v. United States, 437 U.S. 54, 70, n. 26 (1978). This exception, however, only applies to those whose "sole role is that of a mere bettor." Merrell, 701 at 54 n. 2 (emphasis added). Thus anyone--including a dealer in a poker game--who operates, carries on, or causes a business to function, "conducts" that business within the meaning of the Act. See United States v. Harris, 460 F.2d 1041, 1049-50 (5th Cir.1972), cert. denied, 409 U.S. 877 (1972).
 
 
 14
 In the instant case, the evidence clearly indicates that defendant was not only a regular dealer, but that he cut 5% from every pot for the house. The evidence further shows that Pack "ran the game and coordinated it so that it would run smoothly." Furthermore, testimony indicated that, on at least one occasion, defendant gave the "rake" money to DeSarro. This evidence was sufficient for a rational jury to find that defendant was one of the persons who helped "conduct" the gambling business under Sec. 1955. It may be that evidence exists showing that defendant sometimes placed bets, but the fact that a dealer occasionally bets does not confer upon him "mere bettor" status.[4] The word "mere" implies an ordinary, unadorned condition. We realize that gambling is a two-way street. There must be consumers as well as purveyors of the service. But providing valuable services to "the house"--such as dealing the hands and "raking" the house share--so enhances a person's participation in the illegal gambling business that it is no longer possible for that individual to legitimately claim "mere" bettor status.
 
 Motion to Suppress
 
 15
 Lastly, defendant contends that the trial court committed reversible error in denying his Motion to Suppress. Specifically, defendant maintains that the fact that he had not been taken into custody did not eliminate the need to provide Miranda warnings. In support of this argument, defendant erroneously relies on Beckwith v. United States, 425 U.S. 341, 349 (1976) (Brennan, J. dissenting). Notwithstanding defendant's assertion to the contrary, it is well settled that a person is not entitled to be "mirandized" before interrogation unless that person is in custody. See e.g., United States v. Warner, 971 F.2d 1189, 1201 (6th Cir.1992) (holding that a person is not entitled to be notified of her Miranda rights before an interrogation if that person is not in custody); United States v. Peete, 919 F.2d 1168, 1176 (6th Cir.1990) (Miranda applies only to situations involving custodial interrogations). The rationale for this requirement is the inherent coercive effect of a custodial setting. United States v. Warner, 971 at 1201 n. 2 ( citing Beckwith v. United States, 425 U.S. 341, 346-47 n. 7 (1976)).
 
 
 16
 It is undisputed that defendant had not been taken into custody when he was questioned by FBI agents at his home. Even though he had not been informed of his constitutional rights, it was not error for the trial court to admit alleged statements elicited by special agents Robert Kroner, Jr., and Lawrence L. Lynch during their June 11, 1991 questioning of defendant.
 
 IV. CONCLUSION
 
 17
 For the foregoing reasons, defendant's conviction is AFFIRMED.
 
 
 18
 NATHANIEL R. JONES, Circuit Judge, concurring.
 
 
 19
 When the government prosecutes an illegal gambling business as violating 18 U.S.C. Sec. 1955, it must, among other things, allege that five or more persons were "involved" in the business. In prosecuting Jack Desarro and his widespread gambling enterprise, the government alleged that two relatives, Christopher DeSarro and Jackie DeSarro, and another associate, Jimmy Rossi, were involved in the business. From the record before us, it appears that these four persons, not parties to this appeal, had significant roles in managing and conducting the gambling operations.
 
 
 20
 It is not clear from the record why the fifth person charged happened to be Appellant Edward Pack, a fifty-three-year-old African-American policeman in the East Liverpool Police Department who had no criminal history. The government does not claim that Pack was involved with the illegal Italian-American club gambling that it makes much of, nor with the bookmaking, lotteries, or gambling machines that DeSarro operated through various bars around East Liverpool.
 
 
 21
 Rather, Pack only was involved in small Sunday night poker games held near Jack DeSarro's house, at which DeSarro provided free food and drinks for his guests. Taking the evidence against Pack at its strongest, he was merely one of several people who both played in those poker games and dealt the cards. The government acknowledged at trial that others served as dealers besides Pack, J.A. at 48, and one of those people, Charles Allison, provided the heart of the case against Pack. Throughout the DeSarro operation, I assume, there must have been numerous persons at least as involved as Pack.
 
 
 22
 Since the government has chosen to prosecute Pack, however, we have little discretion in deciding whether he was "involved" in the business for purposes of the statute. The Supreme Court has stated that Sec. 1955 "proscribes any degree of participation in an illegal gambling business, except participation as a mere bettor." Sanabria v. United States, 437 U.S. 54, 70 n. 26 (1978). Citing Sanabria, we have affirmed the conviction of a waiter/janitor who served coffee, cleaned ash trays, and stacked chairs at a gambling business. United States v. Merrell, 701 F.2d 53 (6th Cir.1983). Following these cases, I must affirm Pack's conviction, for which, under United States Sentencing Commission Guidelines Manual Sec. 2E3.1, he was sentenced at the same base offense level as anyone engaged in a gambling business.
 
 
 23
 I therefore join the opinion of the court, but express my concern about the injustice that can occur when prosecutors must fuse together a minimum number of persons in an indictment, when a jury can convict those persons for anything along a vast range of conduct, and when, finally, judges must punish them at the exact same base offense level under the straightjacket sentencing of the Guidelines.
 
 
 
 *
 Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 18 U.S.C. Sec. 1955(a) makes it a federal crime to "conduct, finance, manage, supervise, direct, or own all or part of an illegal gambling business." As defined by the Act, "illegal gambling business" means a gambling business which:
 (i) is a violation of the law of a State or political subdivision in which it is conducted;
 (ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and
 (iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.
 See 18 U.S.C. Sec. 1955(a)-(e).
 
 
 [2]
 The government asserts, and defendant does not dispute, that Ohio law makes it a felony to engage in bookmaking or operate a lottery or numbers game. See Ohio Rev.Code Ann. Secs. 2915.01 and 2915.02. The violation of state law element is jurisdictional and need only be proven with respect to the business; the government is not required to prove that a particular defendant personally committed an act of gambling prohibited by state law. Sanabria v. United States, 437 U.S. 54, 68-70 n. 22 (1978). With respect to the thirty day element, the statute requires that the business exist in "substantially continuous operation" for a period exceeding 30 days. 18 U.S.C. Sec. 1955(b)(iii). It is not required that the gambling business operated on a daily basis, but only that it operated on a regular schedule sufficient to remove it from the "casual[,] non-business category." United States v. Nerone, 563 F.2d 836, 843-44 (7th Cir.1977), cert. denied, 435 U.S. 951 (1978)
 
 
 [3]
 Even if Appellant could somehow establish that the weekly poker game played at DeSarro's house from 1988 to 1989 was not part of the "illegal gambling business" that DeSarro conducted from the Italian-American Club in Midland, Pennsylvania in the late 1970's (and later at the ItAm Club during the 1980's), the evidence was sufficient for the jury to find that the East Liverpool game at DeSarro's house was, in and of itself, an "illegal gambling business" under 18 U.S.C. Sec. 1955. Specifically, the evidence showed that the weekly poker game played in East Liverpool: (i) was in violation of the State Laws of Ohio because it was operated in a manner designed to produce income or profit; (ii) involved DeSarro and at least four other persons who conducted, financed, managed, supervised, or owned all or part of the business; and (iii) remained in a substantially continuous operation for a period in excess of thirty days
 
 
 [4]
 We note that the converse of this situation, although not before the Court in this case, probably would resolve itself differently: a bettor who occasionally deals might very well lose his status as "mere" bettor with those acts