Carroll v. Sessions 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-92-008-CV

Â Â Â Â Â C. L. CARROLL, ET AL.,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellants
Â Â Â Â Â v.

Â Â Â Â Â J. R. SESSIONS, JR.,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee
 

From the 87th District Court
Freestone County, Texas
Trial Court # 91-378-B
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

O P I N I O N
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â Â Â Â Â Â In this conspiracy action, Carroll alleged that, shortly after he filed a federal civil rights cause
of action against Sheriff Sessions in 1988, Sessions entered into an agreement to pay Joe Pool
$5000 to murder Carroll. The civil rights case was dismissed by the federal court on December
4, 1989. Carroll filed this suit on October 15, 1990. The court granted Sessions' motion for
summary judgment on November 18, 1991. The partial summary judgment was rendered final
by an order of severance signed by the trial court on December 9. In a single point of error,
Carroll argues that the summary judgment should be reversed because a genuine issue of material
fact exists as to whether Sessions and Pool entered into a conspiracy and contract to murder
Carroll.
Â Â Â Â Â Â Sessions argues that his affidavit, filed in support of his motion for summary judgment,
constitutes uncontroverted testimonial evidence that is clear, positive and direct, otherwise credible
and free from contradictions and any inconsistencies, and that could be readily controverted.


 In
his supporting affidavit, Sessions stated:
I first learned of the alleged "murder for hire" contract which is claimed by Plaintiff
to have been entered into between Joe Poole and myself during a deposition in the 1988
Federal Court litigation. At that time I did not really give the allegation much attention
because it was so ridiculous. The next time I was made aware of this alleged murder
scheme was when I was served with the above entitled and numbered lawsuit. I
unequivocally state that I have never solicited, offered to pay, paid, or otherwise
commissioned the killing of anyone, including C. L. Carroll. I never had any discussion
with Joe Poole in which the potential murder of C. L. Carroll was contemplated or
discussed. I have never, and would never, enter into any arrangement to take a human
life and the same would be in contradiction to my sworn duties as a law enforcement
officer.
No agreement, arrangement or understanding has ever existed by which I solicited
or offered anything of value to Joe Poole to murder C. L. Carroll. The alleged "murder
for hire" arrangement claimed in the Plaintiff's suit did not occur.

Â Â Â Â Â Â After the hearing on Sessions' motion for summary judgment, the court granted Sessions'
motion for leave to file the affidavit of Joe Pool. By affidavit, Pool stated:
I hereby state and testify under oath, that I never entered into any agreement with
Sheriff Sessions to kill or frighten C. L. Carroll. Sheriff Sessions never solicited me to
kill or frighten C. L. Carroll. Sheriff Sessions and I never discussed, planned or
considered the murder of, harassment of, or any injury to C. L. Carroll. Sheriff Sessions
never paid or agreed to pay me $5,000.00 for any reason.
C. L. Carroll made it known to me that he had a grudge against Sheriff Sessions for
quite some time. He was always trying to get something on Sheriff Sessions. He tried
to get me to make statements as to matters, whether true or not, against Sheriff Sessions
in the past. To please C. L. Carroll, and obtain money and other things from C. L.
Carroll, I went along with C L. Carroll's desires as long as I was taken care of by C. L.
Carroll.
There never was and never has been an agreement between Sonny Sessions and
myself to in any way harm C. L. Carroll; nor was any such agreement or plan ever
discussed or contemplated. Furthermore, I know, and knew at the time, that Sonny
Sessions would never enter into such an agreement. No agreement, understanding,
solicitation, or other approval for any injury, killing, frightening, or harassment of C.
L. Carroll or his family ever existed between Sonny Sessions and myself, and I never
discussed any such matter with Sonny Sessions.

Â Â Â Â Â Â The summary judgment rule permits the granting of a summary judgment on the basis of
uncontroverted testimonial evidence of an interested witness if that evidence "is clear, positive and
direct, otherwise credible and free from contradictions and inconsistencies, and could have been
readily controverted."



Â Â Â Â Â Â After Carroll filed several affidavits and deposition excerpts as controverting summary
judgment evidence, Sessions objected that the controverting portions of the evidence were hearsay
and not based on personal knowledge.


 Because the court sustained Sessions' objections to
Carroll's controverting evidence, Sessions' affidavit and Pool's affidavit remain uncontroverted. 
Â Â Â Â Â Â Carroll also argues that the testimonial evidence of Sessions and Pool is not "positive and
direct." However, after carefully reviewing Sessions' affidavit, we find that it is "clear, positive
and direct, otherwise credible and free from contradictions and inconsistencies."



Â Â Â Â Â Â Finally, Carroll argues that the testimonial evidence of Sessions and Pool could not have been
"readily controverted" because only Sessions and Pool would have knowledge of an agreement
made in secret. However, "could have been readily controverted" does not simply mean that the
movant's summary judgment proof could have been easily and conveniently rebutted.


 Instead,
it means that testimony at issue is of a nature that can be effectively countered by opposing
evidence.


 The question of Sessions' intent is not in issue here. Session's motion for summary
judgment was based on his denial that any agreement with Pool existed. That question is one
involving matters susceptible of objective proof or disproof, such as whether Sessions paid Pool
$5000 or whether Pool took any action to carry out the alleged agreement.


 If Carroll cannot
secure such evidence during the discovery process, he is unlikely to produce it at trial.


 Carroll's
single point of error is overruled.
Â Â Â Â Â Â We affirm the summary judgment.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â BOBBY L. CUMMINGS
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Before Chief Justice Thomas,
Â Â Â Â Â Â Â Â Â Â Justice Cummings, and
Â Â Â Â Â Â Â Â Â Â Justice Vance
Affirmed
Opinion delivered and filed June 24, 1992
Do not publish




"Palatino","serif"'> at 1254-55 (the possession of the image begins when the
image is cached and ends when the file is deleted and overwritten by other dataÂ).[6]

Â Â Â Â Â Â Â Â Â Â Â  Â[T]he Legislature intended
in cases like this to make possession of each item of child pornography an
Âallowable unit of prosecution.ÂÂÂ  Vineyard v. State, 958 S.W.2d 834,
838 (Tex. Crim. App. 1998); see Witt v. State, 237 S.W.3d 394, 397 (Tex.
App.ÂWaco 2007, pet. refÂd); Roise v. State, 7 S.W.3d 225, 232 (Tex.
App.ÂAustin 1999, pet. refÂd).[7]Â 
Thus, LancasterÂs maintaining of possession of the video recording from March
2004 until January 2007 was a single prosecutable offense.Â  Id. Â He could not be prosecuted separately for each day, week,
month or year he maintained possession of the recording.

Â Â Â Â Â Â Â Â Â Â Â  The savings clause
unambiguously provides that the former statute applies if any element of
the offense was committed before September 1, 2005.Â  See Dickens v. State,
981 S.W.2d 186, 188 (Tex. Crim. App. 1998) (addressing similar savings
clause).Â  Lancaster acquired the video recording in March 2004, more than a
year before the 2005 amendments to section 3.03 took effect.Â  In fact, every
element of the offense was committed before September 1, 2005, and thus the
former statute applies.Â  See Williams v. State, 71 S.W.3d 862,
864 (Tex. App.ÂTexarkana 2002), revÂd on other grounds, 114 S.W.3d 920
(Tex. Crim. App. 2003); Harvill v. State, 13 S.W.3d 478, 481 (Tex. App.ÂCorpus Christi 2000, no pet.).[8]Â 
Therefore, the court erred by ordering LancasterÂs sentence under count 17 in
trial court cause no. 07-01488-CRF-272 (appellate cause no. 10-08-00025-CR) to
run consecutively.

Â Â Â Â Â Â Â Â Â Â Â  The proper remedy for such
error is to modify the judgment to delete the unlawful cumulation order.Â  Beedy
v. State, 250 S.W.3d 107, 113-14 (Tex. Crim. App. 2008).Â  In applying this
remedy, Lancaster further argues that, because the prior version of section
3.03(b) applies to count 17, it necessarily applies to all counts for which he
was convicted.Â  We disagree.

Â Â Â Â Â Â Â Â Â Â Â  Lancaster first refers to
section 3.03 and to the savings clause and observes that both speak with
reference to an ÂoffenseÂ as opposed to Âoffenses.ÂÂ  We initially note that,
assuming for the moment that he was not charged with or convicted of count 17,
Lancaster does not dispute that the current version of section 3.03 would
otherwise apply.Â  Section 3.03(b) permits consecutive sentences if Âeach
sentence is for a conviction of [an offense under section 43.26].ÂÂ  Tex. Pen. Code Ann. Â§ 3.03(b)(3)(A).Â 
As the Texarkana Court has explained:

The statute does not reflect that the
Legislature intended to prevent the State from seeking to have sentences
running consecutively if they fell within subsection (b) of the act even if
other charges arising from the same criminal episode were also prosecuted as a
part of the single criminal action.Â  The purpose of subsection (b) is to allow
sentences to run concurrently or consecutively for the types of crimes
specifically set out without changing the rule for other crimes that are part
of the criminal episode but do not fall within these categories.

Â 

Kuhn v. State, 45 S.W.3d 207, 209-10 (Tex.
App.ÂTexarkana 2001, pet. refÂd).

Â Â Â Â Â Â Â Â Â Â Â  There is nothing that
prohibits the State from prosecuting in a single trial offenses arising out of
the same criminal episode even if some of the offenses were committed under one
version of the law and others were committed under a different version.

Â Â Â Â Â Â Â Â Â Â Â  Our research has disclosed several
cases in which an appellate court approved judgments requiring some, but not
all, of a defendantÂs sentences to run consecutively where the law permitted
cumulation of sentence for only some of the offenses for which the defendant
was tried.Â  See Yvanez v. State, 991 S.W.2d 280, 282-83 (Tex.
Crim. App. 1999); Garza v. State, 687 S.W.2d 325, 329-30 (Tex. Crim.
App. 1985); DeLeon v. State, 294 S.W.3d 742, 746-48 (Tex. App.ÂAmarillo 2009, pet. refÂd); Kuhn, 45 S.W.3d at
209-10.Â Â Â Â Â Â Â  Therefore, we will modify the judgment to reflect that
LancasterÂs sentence under count 17 does not run consecutively but his other
sentences do.[9]Â 
We sustain LancasterÂs second point in part.

Â Â Â Â Â Â Â Â Â Â Â  In light of our disposition
of LancasterÂs second issue, we need not address his third point which
complains of an ex post facto violation.[10]Â 
See Tex. R. App. P. 47.1.

We modify the judgments in trial court
cause no. 07-01488-CRF-272 (appellate cause no. 10-08-00025-CR) by deleting the
unlawful cumulation order in count 17 and modifying the cumulation order in count
18, and we affirm those judgments as modified. Â We affirm the remaining
judgments.

Â 

FELIPE REYNA

Justice

Before Chief
Justice Gray,

Justice
Reyna, and

Justice
Davis

(Chief
Justice Gray concurring and dissenting with note)*

Affirmed as
modified

Opinion
delivered and filed May 26, 2010

Publish

[CRPM]

Â 




*Â Â Â Â Â Â Â Â Â Â  (Chief
Justice Gray would affirm the trial courtÂs judgments without modification.Â  He
does not join any part of the opinion and concurs in the judgment except to the
extent that it reduces the sentence by running some concurrent with others,
noting that all elements of the offense occurred after the date the statute was
modified to allow stacking of the sentences and the date of acquisition is not
an element of the offense.Â  A separate opinion will not issue.)

Â 









[1]
Â Â Â Â Â Â Â Â Â Â Â Â Â  As with the victimÂs
status as a 9-year-old in Barajas, Âsexual molestation of young
childrenÂ is not a fact of consequence that tends to prove or disprove
LancasterÂs guilt for possession of child pornography, except that the State
had to prove that the images in question depicted a child engaging in sexual
conduct.Â  See Tex. Pen. Code Ann.
Â§ 43.26(a)(1) (Vernon 2003); Barajas v. State, 93 S.W.3d 36, 39 (Tex. Crim. App. 2002).

Â 





[2]
Â Â Â Â Â Â Â Â Â Â Â Â Â  Relying on Judge
MeyersÂs dissent in Barajas, one commentator has observed that Âit is
now difficult for parties to distinguish between proper and improper commitment
questions, because the modified Standefer test now requires that
commitment questions lie somewhere between fact-specific and vague. Â However,
the majority in Barajas never says, with absolute certainty, where the
proper medium lies.ÂÂ  Esperanza Guzman, Comment, Standefer v. State: The
Creation of the Criminal DefendantÂs Diminished Right to a Trial by a Fair and Impartial
Jury, 37 St. MaryÂs L.J. 477,
507-08 (2006).Â  The question at issue in this case appears situated Âwhere the
proper medium lies.ÂÂ  See id.

Â 





[3]
Â Â Â Â Â Â Â Â Â Â Â Â Â  Article I, section
10 provides in pertinent part, ÂIn all criminal prosecutions the accused . . .
shall have the right of being heard by himself or counsel, or both.ÂÂ  Tex. Const. art. I, Â§ 10.





[4]
Â Â Â Â Â Â Â Â Â Â Â Â Â  Section 3.03(a) provides:

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  When the accused is
found guilty of more than one offense arising out of the same criminal episode
prosecuted in a single criminal action, a sentence for each offense for which
he has been found guilty shall be pronounced. Â Except as provided by Subsection
(b), the sentences shall run concurrently.

Â 

Section 3.03(a) has remained unchanged since 1995.Â  See
Act of May 26, 1995, 74th Leg., R.S., ch. 596, Â§ 1, 1995 Tex. Gen. Laws 597,
597 (current version at Tex. Pen. Code
Ann. Â§ 3.03(a) (Vernon Supp. 2009)).





[5]
Â Â Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  When
a computer user deletes a file, it is not simultaneously removed from her
computer. Â The physical location on the hard disk where the deleted file
resides is marked by the computer as unallocated file space, which allows it to
be overwritten. Â The file is not actually removed from the computer until
another file overwrites it. Â While the file is marked for deletion (but not yet
overwritten), it exists in unallocated file space. Â Forensic software allows an
investigator to search and view the contents of the unallocated file space.

Â 

Ty E. Howard, DonÂt Cache Out Your
Case: Prosecuting Child Pornography Laws Based on Images Located in Temporary
Internet Files, 19 Berkeley Tech.
L.J. 1227, 1234 n.22 (2004).

Â 





[6]
Â Â Â Â Â Â Â Â Â Â Â Â Â  ÂSignificantly, the
time period of possession does not end when a user deletes the image because
the image is only marked for deletionÂit still physically exists on the
computer, albeit in a different format.ÂÂ  Id.
at 1255 n.157.

Â 





[7]
Â Â Â Â Â Â Â Â Â Â Â Â Â  The Âallowable unit
of prosecutionÂ is a double jeopardy concept.Â  See Ex parte Hawkins,
6 S.W.3d 554, 556-57 (Tex. Crim. App. 1999).

Â 

The Double Jeopardy Clause is offended
if a defendant is successively prosecuted for the same offense. The legislature
defines whether offenses are the same. It does so by prescribing the Âallowable
unit of prosecution,Â which is Âa distinguishable discrete act that is a
separate violation of the statute.Â

Â 

Id.
at 556 (quoting Sanabria v. United States, 437 U.S. 54, 69-70 &
n.24, 98 S. Ct. 2170, 2181-82 & n.24, 57 L. Ed. 2d 43 (1978)).

Â 





[8]
Â Â Â Â Â Â Â Â Â Â Â Â Â  The defendants in Williams
and Harvill were convicted of criminal non-support based on their
failure to pay child support both before and after the penalty for the offense
was changed.Â  See Williams v. State, 71 S.W.3d 862, 864 (Tex.
App.ÂTexarkana 2002), revÂd on other grounds, 114 S.W.3d 920 (Tex. Crim.
App. 2003); Harvill v. State, 13 S.W.3d 478, 481 (Tex. App.ÂCorpus Christi 2000, no pet.).Â  The trial court in both
instances applied the new punishment range.Â  See Williams, 71
S.W.3d at 864; Harvill, 13 S.W.3d at 482.Â  Both intermediate courts of
appeal found this to be error because an element of the offense in each
instance had occurred before the effective date of the statutory amendment.Â  See
Williams, 71 S.W.3d at 864-65; Harvill, 13 S.W.3d at 481-82.Â  The
Court of Criminal Appeals reversed in Williams because the defendant had
stipulated that his offense occurred after the amendment took effect.Â  See
Williams v. State, 114 S.W.3d 920, 921-22 (Tex. Crim. App. 2003).





[9]
Â Â Â Â Â Â Â Â Â Â Â Â Â  The trial court
entered a separate judgment for each of the 100 counts for which Lancaster was
convicted.Â  The court ordered his 20 sentences in trial court cause no.
07-01488-CRF-272 (appellate cause no. 10-08-00025-CR) to run sequentially.Â 
Thus, his sentence under count 17 was to begin to run after his sentence under count
16 had ceased to operate.Â  Accordingly, we will modify these judgments by: (1)Â 
deleting the cumulation order for count 17 so that the sentence under count 17
commences on the date of imposition of sentence, December 13, 2007; and (2)
modifying the cumulation order for count 18 so that the sentence under count 18
begins to run after the sentence under count 16 ceases to operate.

Â 





[10]
Â Â Â Â Â Â Â Â Â Â Â  Lancaster generally
contends in his third point that the application of the current version of
section 3.03(b) to offenses committed before September 1, 2005 constitutes the
imposition of an ex post facto law.Â  Although he implies that many of the
offenses for which he was convicted occurred before this date, the only offense
that he specifically identifies as having occurred before this date is the one
under count 17.