**UNITED STATES of America,
Appellee,**

v.

**Roger OFFNER, Defendant,**

**George Conforti, John Fitzsimmons,
Defendants–Appellants.**

Nos. 03–1234(L), 03–1236(CON).

United States Court of Appeals,
Second Circuit.

Feb. 10, 2004.

Preetinder Bharara, Assistant United States Attorney, for James B. Comey, United States Attorney, Southern District of New York (Michael G. McGovern, Assistant United States Attorney, of counsel), for Appellee.

John E. Bruder, Bound Brook, NJ, for Defendant–Appellant Conforti.

Kenneth F. Hense, Manasquan, NJ, for Defendant–Appellant Fitzsimmons.

Present: NEWMAN, KEARSE, and CALABRESI, Circuit Judges.

## SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the District Court is AFFIRMED.

Defendants-appellants George Conforti and John Fitzsimmons ("Defendants") were charged in a two-count indictment with conducting an "illegal gambling business," in violation of 18 U.S.C. § 1955(a)-(b) and 18 U.S.C. § 2, and conspiring to do the same, in violation of 18 U.S.C. § 371. The jury convicted Defendants on both counts, and the district court (Baer, J.) sentenced them principally to 21 months' imprisonment and two years' supervised release.

On appeal, Defendants argue that the evidence was insufficient to support their convictions, that the district court improperly precluded them from mounting an advice-of-counsel defense to the aiding-and-abetting theory, and that the jury instructions on aiding and abetting were inadequate. We reject each argument and accordingly affirm the judgments of conviction.

The government's main witness, Jack Lazzaro, testified that Defendants ran a sports-betting operation in New York and employed him as a "runner" whose job it was to recruit bettors and settle up with them on their bets on a weekly basis. Under Defendants' direction, Lazzaro would supply each new bettor with a toll-free number to a "sports book" located on the island of Curaçao. Lazzaro would also ask each new bettor to provide a password, which Lazarro would then convey to Defendants so that they could establish the bettor's account. Bettors would place bets using the toll-free number, and, each week, Defendants would tell Lazzaro how much each bettor won or lost. After settling up with each bettor, Lazzaro would give the money he collected to Defendants, who in turn would pass it on to the Curaçao operation. The

government also presented other evidence, such as tape recordings of Fitzsimmons and John Romeo (a government informant) discussing how they would go about collecting on a customer's past-due gambling debt.

Defendants argue that section 1955—either by its own terms or through its incorporation of New York's criminal gambling laws—requires the government to show that the gambling operation in question was a "business," which, in the sports-betting context, requires proof that the operation was a "bookmaking" operation. Specifically, Defendants argue that a bookmaking operation is characterized by the charging of "vigorish," which is a broker-age fee, usually ten percent, that bookmakers charge losing bettors on all their bets to ensure that the bookmakers make a profit regardless of the outcome of a given sports event. Defendants claim that the government's failure to offer proof that vigorish was charged means that there was insufficient evidence to support their convictions.

We reject this argument because, even assuming *arguendo* that section 1955 requires proof that a sports-betting operation is a *bookmaking* operation, the repeated characterization of the Curaçao operation as a "sports book" in Lazzaro's testimony is sufficient to support the jury's conclusion that the Curaçao operation was indeed a bookmaking operation. Once this is established, Defendants' activities easily qualify them as "conductors" of that operation. *See United States v. Todaro*, 550 F.2d 1300, 1302 n. 5 (2d Cir.1977) ("Thus Congress' intent was to include all those who participate in the operation of a gambling business, regardless how minor their roles and whether or not they be labeled agents, runners, independent contractors or the like, and to exclude only customers of the business.") (internal quotation marks omitted); *see also Sanabria v. United States*, 437 U.S. 54, 70 n. 26, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978).[1]

Accordingly, we do not have to reach the issue of whether section 1955, or the predicate New York gambling law, *see* N.Y. PENAL LAW § 225.05 (defining the misdemeanor offense of promoting gambling in the second degree); *id.* § 225.00 (providing definitions), in fact require that a gambling operation employ a "built-in" profit mechanism (such as vigorish in the sports-betting context). For substantially the reasons given by the court below, however, we would be hard-pressed to find such a requirement in either statute.

 Defendants also contend that the district court improperly precluded them from putting on an "advice-of-counsel" defense to the aiding-and-abetting theory and that the jury instructions on aiding and abetting were flawed. We need not deal with the merits of these claims, however. Any conceivable error that applies to the aiding-and-abetting theory is harmless since, as is clear from the jury verdict form, the jury found Defendants guilty of violating section 1955 both as principals and as aiders and abettors.[2] *See* Fed. R.Crim.P. 52(a).

We have considered all of Defendants' claims and find them to be without merit. We therefore AFFIRM the judgments of convictions.

---

1. Defendants do not dispute that the government's proof satisfied section 1955(b)(1)'s five-person and gross-revenue requirements.

2. Defendants make no claim that the advice-of-counsel defense would have any applicability to their liability as principals.