Filed 2/13/25  P. v. Rodriguez CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>HECTOR RODRIGUEZ,<br><br>    Defendant and Appellant. | D083063<br><br>(Super. Ct. No. FVI18002029) |

APPEAL from a judgment of the Superior Court of San Bernardino, Joseph B. Widman, Judge.  Affirmed as modified, and remanded with directions.

Cynthia M. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Heather B. Arambarri, Deputy Attorneys General, for Plaintiff and Respondent.

Hector Rodriguez fired a gun into a car four times, hitting two passengers inside. A jury convicted Rodriguez of one count of attempted voluntary manslaughter (Pen. Code, §§ 664, 192[1]; count 1), two counts of assault with a firearm (§ 245, subd. (a)(2); counts 3 & 4), two counts of shooting at an occupied vehicle (§ 246; counts 5 & 6), and found true enhancement allegations related to each count. Thereafter, the trial court found true prior serious felony convictions supporting an enhanced sentence under the Three Strike Law and sentenced Rodriguez to an aggregate prison term of 75 years to life, consisting of consecutive terms of 25 years to life for each conviction under section 246, counts 5 and 6, and a consecutive term of 25 years to life for a firearm enhancement (§ 12022.53) related to count 5. The court stated it was striking *and* staying the remaining enhancements under section 1385.

On appeal from the judgment, Rodriguez asserts he was wrongfully convicted of two counts under section 246 because the statute contemplates a single crime based on a shooting, not separate crimes for each occupant of the vehicle. In supplemental briefing authorized by this court, Rodriguez further argues that if the convictions are based on the firing of separate shots, as the Attorney General asserts, one of the convictions must still be reversed because the jury was not properly instructed on this theory. Alternatively, Rodriguez argues that remand for resentencing is required because the trial court did not consider whether it was required to stay one of the convictions under section 654.

In addition, Rodriguez argues the trial court erred by stating it was staying the enhancement punishments. The Attorney General concedes the error and both parties agree this court may correct the judgment to reflect

---

[1] Subsequent undesignated statutory references are to the Penal Code.

that the enhancements are stricken because the trial court clearly indicated this was its intention.

We accept the Attorney General's concession and agree with the parties that this court should modify the judgment to reflect the enhancements are stricken. We reject Rodriguez's arguments concerning the convictions under section 246 and the application of section 654. Accordingly, the judgment is affirmed as modified in the disposition of this opinion.

FACTUAL AND PROCEDURAL BACKGROUND

At the time of the crimes, one of the occupants of the car that Rodriguez shot at, M.H., lived in a house in a remote area north of San Bernardino. M.H. lived with her brother, her friend S.G., and S.G.'s children. The other occupant of the car, A.P., also periodically stayed at the house. M.H., S.G., and A.P. used methamphetamine regularly at the house.

M.H. also used methamphetamine regularly with Rodriguez. M.H., however, testified that she never used the substance with A.P. and Rodriguez at the same time. M.H. had an intimate relationship with both A.P. and Rodriguez. M.H. also had a boyfriend, R.C., who she testified was abusive. M.H. would often call Rodriguez to pick her up from R.C.'s house after episodes of abuse. Rodriguez encouraged M.H. to break up with R.C.

The day before the shooting, Rodriguez and M.H. went to R.C.'s house to fill up a water tank because the water service had been disconnected at M.H.'s house. Rodriguez also took a power washer from R.C.'s house. When R.C. discovered Rodriguez had taken the power washer, he became angry and told M.H. he would "beat her ass" if the washer was not returned.

Several hours later, around 2:00 a.m. the following day, M.H. was drinking with S.G. and Rodriguez at their house when A.P. called her. A.P. said his grandmother had passed away and he needed to talk. Around the

same time, Rodriguez left the house to visit a friend and then to return the power washer to R.C.'s house.  At 2:47 a.m., after Rodriguez left, A.P. arrived at the house and parked his car across the street.  M.H. came outside and got into A.P.'s car to talk.

While M.H. and A.P. were talking in A.P.'s car, Rodriguez returned to the house in his truck.  He pulled up next to A.P.'s parked car, so that his driver's side window and A.P.'s driver's side window faced each other.  A.P. testified that both windows were rolled down, and that Rodriguez pointed a gun at him.  In response, A.P. raised his arms and said, "Hey dawg, it's me." Rodriguez then said, "All right, I just wanted to make sure."  M.H. testified that Rodriguez used his fingers to simulate a gun, pointed them at A.P., and told A.P. that A.P. was lucky he did not shoot him.  M.H. said A.P. and Rodriguez then laughed, and Rodriguez pulled into the driveway, got out of his truck, and shut off the lights of the house.

According to A.P., moments after Rodriguez went to the house, he returned to his truck and drove toward A.P.'s car.  A.P. testified that when he saw the truck coming towards him, he rolled up his window, and started his car.  Rodriguez then fired a gun four times at the driver's side of A.P.'s car, striking A.P. in the shoulder and the forearm.  The bullet that hit A.P. in the forearm also struck M.H. in the stomach.  A.P. testified that two bullets struck the driver side window of his car, one struck the car's frame between the driver and passenger side doors, and one struck the car's rear window.

A.P. drove to a nearby gas station while M.H. called 911.  Before authorities arrived, A.P. hid a bag of ammunition clips that were in his trunk in a dumpster.  A.P. and M.H. testified that A.P. did not have a gun in his car at the time of the shooting.

4

Rodriguez's testimony from an earlier trial was read to the jury. Rodriguez stated that when he returned to the house, he pulled up next to A.P.'s car and "gestured that [he] had a gun." He said he could not tell who was in the car because it was dark and the car's windows were up. Rodriguez said after he made the gun gesture, he parked his truck in front of M.H.'s house, waited a minute to see if the car would leave, then went inside and shut off the house's exterior lights. Once inside, Rodriguez asked S.G. where M.H. was, and S.G. responded she did not know. He then checked M.H.'s room and saw she was not in the house.

Rodriguez testified he thought M.H. was in the car with R.C. and that she might be in danger. When he got back in his truck and drove toward A.P.'s car, which was also moving, he saw a flash that he thought was gunfire, prompting Rodriguez to fire his gun at the car four times. Rodriguez then drove to the house he shared with his wife, dropped off his truck, and went back to M.H.'s house.

Rodriguez was arrested later that day at M.H.'s house. The San Bernardino County District Attorney filed an information charging Rodriguez with two counts of attempted murder (§§ 664, subd. (a), 187, subd. (a); counts 1 & 2), two counts of assault with a firearm (§ 245, subd. (a)(2); counts 3 & 4), and two counts of shooting at an occupied vehicle (§ 246; counts 5 & 6)). With respect to all six counts, the information alleged Rodriguez personally inflicted great bodily injury (§ 12022.7, subd. (a)). With respect to counts 1, 2, 5 and 6, the information alleged Rodriguez personally discharged a firearm causing great bodily injury (§ 12022.53, subd. (d)). With respect to counts 3 and 4, the information alleged Rodriguez personally used a firearm (§ 12022.5, subd. (a)). Additionally, the information alleged Rodriguez had suffered three prior serious felony convictions (§ 667,

subd. (a)(1)), subjecting him to sentencing under the Three Strikes Law (§§ 667, subds. (b)–(i); 1170.12, subds. (a)–(d)).

At the conclusion of trial, the jury acquitted Rodriguez on count 2 and convicted him on the five remaining counts. The jury, however, did not convict Rodriguez of attempted murder on count 1, instead finding him guilty of the lesser included offense of attempted voluntary manslaughter. The jury also found true the great bodily injury and firearm allegations alleged in counts 1, 3, 4, 5 and 6, and the trial court found true the allegations regarding the prior convictions. Thereafter, the trial court sentenced Rodriguez to an aggregate term of 75 years to life, consisting of consecutive terms of 25-years-to-life on counts 5 and 6, and a consecutive term of 25-years-to-life for the section 12022.53, subdivision (d) firearm enhancement on count 5. The trial court stayed the remaining counts pursuant to section 654, and both struck and stayed the other great bodily injury enhancements, firearm enhancements, and prior conviction enhancements pursuant to section 1385.

Rodriguez filed a timely notice of appeal from the judgment of conviction.

## DISCUSSION

### I

### *Section 246 Convictions*

Rodriguez contends he was wrongfully convicted of two counts under section 246 because the statute contemplates a single crime based on a shooting, not separate crimes for each occupant of the vehicle. He further contends, in a supplemental brief authorized by this court, that even if the convictions can be based on the firing of separate shots, as the Attorney General argues one of the convictions must still be reversed because the jury

6

was not properly instructed on this theory. The Attorney General responds that the prosecutor did not rely on an invalid legal theory or, if he did, the error was harmless.

In addition, Rodriguez argues that, even if the convictions are properly based on multiple gunshots, remand for resentencing is necessary because the court failed to consider whether one of the convictions should be stayed pursuant to section 654. The Attorney General argues the multiple victim exception to section 654 applies and, therefore, the court properly sentenced Rodriguez to separate consecutive terms on counts 5 and 6.

A

*Additional Background*

The evidence presented at trial, including Rodriguez's own testimony, showed Rodriguez fired four shots at the car occupied by A.P. and M.H. This important fact is not disputed by Rodriguez on appeal. The information filed against Rodriguez charged him with two counts of violating section 246, setting forth the following identical language in counts 5 and 6: "On or about July 22, 2018, in the above named judicial district, the crime of shooting at an [occupied motor vehicle], in violation of Penal Code section 246, a felony, was committed by Hector Rodriguez, who did willfully, unlawfully, and maliciously discharge a firearm at an occupied motor vehicle." (Capitalization omitted.) The information did not identify a victim as to either count, but the section 12022.53, subdivision (d), enhancements following each count identified A.P. as the victim for count 5 and M.H. as the victim for count 6.

After the close of evidence, the trial court instructed the jury with CALCRIM No. 965, advising jurors that Rodriguez was charged in counts 5 and 6 with shooting at an occupied vehicle. The instruction provided that for

7

the jury to convict Rodriguez of this crime, the prosecution had to prove he willfully and maliciously shot a firearm, he shot the firearm at an occupied motor vehicle, and he did not act in self-defense. As with the charges in the information, the instruction did not specify a victim for either count.

The jury was given verdict forms for each count. The verdict forms for counts 5 and 6 identified victims associated with each count. The forms stated: "We, the jury ..., as to the crime charged in Count Five [or Count Six], namely, SHOOTING AT AN OCCUPIED VEHICLE as to [A.P. or M.H.], find the defendant Hector Rodriguez: [¶] NOT GUILTY [or] GUILTY [circle one]." The jury circled guilty on both forms, which then prompted the jury to determine whether the intentional discharge of a firearm and the great bodily injury enhancements for each count were true. Unlike the information, the enhancement portions of the forms did not reference A.P. or M.H.[2]

In her closing argument, the prosecutor explained that to convict Rodriguez, he "must have willfully and maliciously shot a firearm ... at an occupied motor vehicle. And the defendant did not act in self-defense." The prosecutor also explained there was "no requirement that the defendant kn[o]w that the motor vehicle was occupied." In addition, the prosecutor walked the jury through the verdict forms. The prosecutor stated, "Count 5 is shooting at an occupied motor vehicle as it relates to [A.P], and you will find that the defendant is guilty beyond a reasonable doubt, because I've proved that to you as well …. And then, finally, you'll make your way to Count 6, which is on page 13, second to the last page. And this is the same charge as Count 5, but as it relates to [M.H.], you will find the defendant guilty as it

---

[2] The jury circled true for all four enhancements.

relates to [M.H.], because he shot at an occupied motor vehicle which contained [M.H.]. And I've proven that to you beyond a reasonable doubt."

At sentencing, the parties and the trial court did not address the applicability of section 654 to counts 5 and 6. Rather, before imposing consecutive sentences on the counts, the court stated that it was unsure of its decision on this point and it was looking to the factors set forth in Rule 4.425 of the California Rules of Court. The court indicated that because there were two victims, its inclination was to impose consecutive sentences on counts 5 and 6. The court then invited argument from the parties.

The prosecutor argued that concurrent sentences would be appropriate if there were just one bullet fired by Rodriguez. However, because each round constituted a separate violation of section 246 and a separate intention by Rodriguez each time he pulled the trigger, and because there were two victims of the crimes, consecutive sentences were appropriate. Further, the prosecutor asserted the crimes involved separate acts of violence, which constituted an aggravating factor under Rule 4.425. In response, defense counsel pointed to Rodriguez's testimony that he did not know M.H. was in the car and he fired his weapon in self-defense, believing he had been fired on first. Defense counsel also pointed to the facts that Rodriguez expressed remorse for shooting M.H. and he offered, after the start of jury selection, to plead guilty in exchange for a certain term of 40 years in prison.

After argument, the court announced its decision to impose consecutive sentences for counts 5 and 6, pointing to the aggravating factors that Rodriguez engaged in violent conduct that constituted a danger to society and that his criminal convictions as an adult were numerous and increasing in seriousness.

9

B

*Legal Standards*

"Section 954 generally permits multiple convictions:  'An accusatory pleading may charge ... different statements of the same offense' and 'the defendant may be convicted of any number of the offenses charged.'  The issue must be distinguished from the closely related question of whether a defendant may receive multiple punishment based upon a single act or course of conduct.  (*People v. Ortega* (1998) 19 Cal.4th 686, 692, disapproved on another point in *People v. Reed* (2006) 38 Cal.4th 1224, 1228–1229, 1231.)  Section 654 prohibits multiple punishment for the same act or omission.  The Supreme Court has recognized the tension between section 954 and section 654.  The solution adopted, in general, is 'to permit multiple convictions on counts that arise from a single act or course of conduct—but to avoid multiple punishment, by staying execution of sentence on all but one of those convictions.' "  (*People v. Johnson* (2007) 150 Cal.App.4th 1467, 1474, fn. omitted.)

"The proper unit of prosecution is a question of legislative intent that arises when interpreting any criminal statute.  (See *Sanabria v. United States* (1978) 437 U.S. 54, 70 ['Whether a particular course of conduct involves one or more distinct "offenses" under the statute depends on ... congressional choice.']; see generally Note, *Counting Offenses* (2009) 58 Duke L.J. 709.)  Answering a unit of prosecution question requires courts to determine when 'the actus reus prohibited by the statute—the gravamen of the offense—has been committed more than once.' "  (*People v. Whitmer* (2014) 59 Cal.4th 733, 744 (*Whitmer*) (conc. opn. of Liu, J).)

With respect to whether section 654 applies to preclude multiple punishments, a course of conduct is generally indivisible if the defendant

10

harbored a single criminal objective the entire time. (*People v. Gaio* (2000) 81 Cal.App.4th 919, 935.) " ' " 'Whether a course of criminal conduct is divisible ... depends on the intent and objective of the actor.' [Citations.] '[I]f all the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once.' [Citation.]" [Citation.]' [Citations.] However, if the defendant harbored 'multiple or simultaneous objectives, independent of and not merely incidental to each other, the defendant may be punished for each violation committed in pursuit of each objective even though the violations share common acts or were parts of an otherwise indivisible course of conduct.' " (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.) Further, " 'the limitations of section 654 do not apply to crimes of violence *against multiple victims*." (*People v. Oates* (2004) 32 Cal.4th 1048, 1063 (*Oates*), italics added, superseded by statute on other grounds as stated in *People v. Tirado* (2022) 12 Cal.5th 688, 696.)

To the extent Rodriguez's argument requires an interpretation of section 246, "we employ the de novo standard of review." (*People v. Villegas* (2012) 205 Cal.App.4th 642, 646.) "The issue of whether multiple convictions are proper is also reviewed de novo, as it turns on the interpretation of section 954." (*Ibid.*)

C

*Analysis*

1. *Rodriguez Was Properly Convicted of Multiple Counts of Section 246*

Section 246 states, "Any person who shall maliciously and willfully discharge a firearm at an ... occupied motor vehicle ... is guilty of a felony, and upon conviction shall be punished by imprisonment." As the parties agree, the offense does not turn on the number of occupants in the vehicle, or

11

even whether the defendant knew the vehicle was occupied. "The purpose of section 246, when it was enacted in 1949 ... was to combat 'the increasing frequency of shootings into homes by reckless, irresponsible and malicious persons' " and its amendment in 1976 to add " 'occupied motor vehicle' to the specified targets, was intended to strengthen the law prohibiting discharge of a firearm at a motor vehicle." (*People v. Manzo* (2012) 53 Cal.4th 880, 886 (*Manzo*).)

"According to an enrolled bill report prepared by the California Highway Patrol in support of the [1976] amendment, there had been 'an alarming number of incidents in the recent past where a person has discharged a firearm into an occupied vehicle,' with a 'tremendous' potential for 'severe or fatal wounds.' (Cal. Highway Patrol, Enrolled Bill Rep. on Assem. Bill No. 3303 (1975–1976 Reg. Sess.) Sept. 3, 1976, p. 1.) The bill's supporters believed that the act of discharging a firearm at an occupied vehicle, even in the absence of an intent to cause great bodily harm, was serious enough to warrant felony punishment." (*Manzo, supra*, 53 Cal.4th at p. 886.)

As discussed, multiple convictions for the same offense are permitted where the defendant commits multiple completed crimes as determined by the statutory elements of the crime. (*Whitmer, supra*, 59 Cal.4th at p. 744 (conc. opn. of Liu, J.).) The elements of section 246 are (1) acting willfully and maliciously and (2) shooting at an inhabited vehicle. (*People v. Ramirez* (2009) 45 Cal.4th 980, 985.) As Rodriguez points out, the statute "does not even necessarily require a victim to be present." (See *In re Daniel R.* (1993) 20 Cal.App.4th 239, 244 [assault not a lesser included offense of section 246 because "not all violations of section 246 require persons or victims even be physically present"].) Here, the evidence, which Rodriguez does not dispute,

12

established he willfully and maliciously shot at A.P.'s car four times. Thus, he completed the elements of the crime four times and could be charged and convicted accordingly. The jury's conclusion he was guilty of two violations of the statute was proper.

Rodriguez asserts that because he could find no published California opinions where more than one violation of section 246 was charged, he was wrongly convicted of more than one count. This argument lacks merit. As the Attorney General points out, the fact that prosecutors in other cases have charged defendants with only a single count of violating section 246 where the defendant fired multiple shots does not establish error in this case. Because the crime was completed each time Rodriguez fired his gun with the intent to shoot at the occupied vehicle, or with conscious indifference to the probability that the shots would hit the vehicle, the crime was appropriately charged more than once.[3]

---

[3] Rodriguez relies on *People v. Wilson* (2015) 234 Cal.App.4th 193 to support his assertion that only one count of section 246 could be properly charged. *Wilson*, however, does not address the issue in this case. Rather, it addressed the circumstances under which it is appropriate to convict a defendant of multiple counts of section 422, prohibiting criminal threats. The *Wilson* court held that "section 422 prohibits multiple convictions based on multiple threats toward a single victim during a single encounter." (*Id.* at p. 201.) The court explained that "[t]he appropriate unit of prosecution is indicated by section 422's requirement that the victim 'be in sustained fear for his or her own safety or for his or her immediate family's safety,' " which "occurs over 'a period of time "that extends beyond what is momentary, fleeting, or transitory." ' " (*Ibid.*) Thus, "[a] violation of section 422 is not complete upon the issuance of a threat; it depends on the recipient of the threat suffering 'sustained fear' as a result of the communication. It is not appropriate to convict a defendant of multiple counts under section 422 based on multiple threatening communications uttered to a single victim during a brief, uninterrupted encounter." (*Ibid.*) Notably, *Wilson* explained that the defendant in the case conceded multiple convictions of 422 could be obtained

13

## 2. *Rodriguez Was Not Convicted Based on an Illegal Theory*

Rodriguez next argues that the verdict forms and the prosecutor's explanation of the forms allowed the jury to convict him on the illegal theory that there were two violations of section 246 because there were two car occupants. The Attorney General responds that the instructions and the prosecutor's explanation of the elements of the crime were proper. Further, the Attorney General argues the verdict forms and the explanation of those forms did not mislead the jury or allow the jury to convict Rodriguez based solely on the fact that there were two occupants of the car. The Attorney General points to the prosecutor's emphasis of the fact that the crime could be completed even if Rodriguez was not aware that the car was occupied.

We agree with the Attorney General that the references to the victims in the verdict forms, and by the prosecutor during her explanation of the forms, did not present an illegal theory on which Rodriguez could be convicted. Because it was undisputed that Rodriguez fired four shots at A.P.'s car, the references to A.P. and M.H. were irrelevant. This point is illustrated by the two cases that Rodriguez cites in support of his illegal theory argument: *People v. Stutelberg* (2018) 29 Cal.App.5th 314 (*Stutelberg*) and *People v. Medellin* (2020) 45 Cal.App.5th 519 (*Medellin*).

In *Stutelberg*, the defendant used a box cutter during an assault, and was charged with assault with a deadly weapon. (*Stutelberg, supra*, 29 Cal.App.5th at p. 317.) Because the jury was not fully instructed on the legal definition of a deadly or dangerous weapon, the jury could have misclassified a box cutter as an inherently deadly or dangerous weapon when it is not as a matter of law. (*Id.* at p. 317.) The Court of Appeal, therefore, concluded that

---

had the prosecutor pleaded and proved conduct directed at multiple victims of the threats. (*Id.* at pp. 198–199.)

the instruction allowed for the possibility that the jury convicted the defendant based on a legally incorrect theory regarding a required element of assault with a deadly weapon. (*Id*. at pp. 318–319.)

In *Medellin*, the defendant was charged with assault likely to cause great bodily injury, and the jury instruction defined great bodily injury as "greater than minor or moderate harm." (*Medellin, supra*, 45 Cal.App.5th at pp. 531–532.) Highlighting the word "or" in the instruction, the prosecutor argued that a moderate injury would suffice because the prosecution only needed to prove the injury was "more than minor." (*Ibid*.) On appeal, the court concluded, and the Attorney General conceded, that the prosecutor plainly misstated the law. (*Id*. at p. 533.) Because the instruction allowed the jury to convict the defendant based on a misstatement of the law and the trial evidence would allow the jury to convict on the misstated law, the error was not harmless beyond a reasonable doubt. (*Id*. at pp. 534–535.)

Unlike the jury instructions at issue in *Stutelberg* and *Medellin*, the instructions given in this case did not fail to provide or adequately define a required element of the offense of shooting at an occupied vehicle. Rather, the instructions stated that the prosecution was required to show Rodriguez twice willfully and maliciously shot a firearm, he shot the firearm at an occupied motor vehicle, and he did not act in self-defense. The instructions properly defined the terms "willfully," "maliciously," "motor vehicle," and "firearm." The verdict forms and the prosecutor's statements did not mislead the jury on these elements. Rather, they quantified the number of offenses using the number of vehicle occupants instead of the shots fired. Under the evidence in this case, this is a distinction without consequence. Because section 246 does not require any finding regarding the occupants—except the fact that the vehicle is occupied—and there was no dispute that multiple

15

shots were fired, the instructions given here do not suffer from the illegal theory problem identified in *Stutelberg* and *Medellin*.

3. *The Multiple Victim Exception to Section 654 Applies*

Finally, Rodriguez contends the case must be remanded for resentencing so the court may exercise its discretion to stay one count under section 654. The Attorney General responds that because there were two victims of the two offenses, the multiple victim exception to the statute applies and the trial court properly imposed separate, consecutive sentences for counts 5 and 6. We agree with the Attorney General.

Section 654 provides in pertinent part: "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).) The statute prohibits punishment for two offenses arising from the same act or from a series of acts constituting an indivisible course of conduct. (*People v. Corpening* (2016) 2 Cal.5th 307, 311.) "A 'course of conduct' may be considered a single act within the meaning of section 654 and therefore be punishable only once, or it may constitute a 'divisible transaction' which may be punished under more than one statute." (*People v. Kwok* (1998) 63 Cal.App.4th 1236, 1252.)

As noted however, courts have long held that " 'the limitations of section 654 do not apply to crimes of violence against multiple victims.' " (*Oates, supra,* 32 Cal.4th at p. 1063; see *People v. King* (1993) 5 Cal.4th 59, 78 and *Neal v. State of California* (1960) 55 Cal.2d 11, 20 [recognizing multiple victim exception to section 654].) When a defendant commits an act of violence with the intent to harm more than one person or by means likely to cause harm to several persons, his greater culpability precludes application of

16

section 654.  (*People v. Centers* (1999) 73 Cal.App.4th 84, 99; see *Oates,* at p. 1063 [" 'A defendant who commits an act of violence ... by a means likely to cause harm to several persons is more culpable than a defendant who harms only one person.' "]; *People v. Solis* (2001) 90 Cal.App.4th 1002, 1023 [defendant properly punished for two counts of making a criminal threat because his threatening messages were heard by two individuals].)

Courts have applied the multiple victim exception in the context of shots fired at an occupied building or a vehicle under section 246.  (See *People v. Masters* (1987) 195 Cal.App.3d 1124, 1128–1130 [section 654 did not require a stay of sentence for violation of section 246 and assault with a deadly weapon arising from the same shooting where four or five shots were fired at a car occupied by three people]; *People v. Cruz* (1995) 38 Cal.App.4th 427, 434 [multiple punishments proper where multiple shots fired at multiple people].)  One court has concluded the exception applies even when only one shot was fired that endangered multiple people.  (See *People v. Dydouangphan* (2012) 211 Cal.App.4th 772, 781–782.)  Here, as discussed, it is undisputed that Rodriguez fired four shots at a car occupied by two people. Accordingly, the multiple victim exception to section 654 applies.

Given these facts, the trial court and parties reasonably assumed it was unnecessary to address section 654 because it was clear the multiple victim exception precluded a stay.  Rodriguez's argument that the trial court erred in not staying one of the sentences because it did not make a factual finding that the multiple gunshots constituted separate and distinct acts is without merit.  Rodriguez's argument ignores the fact that no such finding was required because each of the violations of section 246 indisputably involved two victims.  Accordingly, Rodriguez was properly sentenced on both counts.

17

## II

### *The Additional Enhancements Must Be Stricken*

Rodriguez asserts, and the Attorney General agrees, that the court erred by stating it was both staying and striking the enhancements, and not simply striking them. The parties also agree that because the trial court's intention to strike the enhancements is clear in the record, this court should correct the judgment to strike them. We agree with the parties that the court erred by both striking and staying the enhancements and that the judgment should be corrected to state the enhancements are stricken.

### A

### *Additional Background*

Prior to sentencing, defense counsel filed a motion to dismiss the firearm, great bodily injury, and prior conviction enhancements pursuant to section 1385. Counsel argued that the mitigating circumstances set forth in section 1385, subdivision (c)(2), subparagraphs (B), (C), (E) and (H) warranted the dismissal of the enhancements in his case. The prosecutor addressed the enhancements in her sentencing brief and argued that the trial court should impose terms of 25 years to life for the section 12022.53, subdivision (d) firearm enhancements on counts 5 and 6, and stay the terms on the remaining enhancements.

At sentencing, the trial court stated that it was going to impose a term of 25 years to life for the section 12022.53, subdivision (d) enhancement on count 5 and strike the remaining enhancements. The trial court explained: "I am going to strike all of the enhancements except for the 25 to life enhancement on count 5. So that is the one enhancement that will remain. The remainder are—the language that I'm using is, they are stayed but may be deemed stricken pursuant to 1385(c). And that is—the exception, though,

18

is the enhancement under count 5 pursuant to Penal Code Section 12022.53(d). And I'd like to briefly explain my reasoning. If you read the statute, it's fairly forceful language about the requirement that the Court dismiss enhancements. In particular, applicable in this case, (b), which is multiple enhancements are alleged in this case. And this code section provides in this instance all enhancements beyond a single enhancement shall be dismissed. And, (c), the application of an enhancement could result in a sentence of over 20 years. In this instance the enhancement shall be dismissed."

The court continued, "Now, there is a big exception. Which is unless the Court finds that dismissal of the enhancement would endanger public safety. Which means there is a likelihood that the dismissal of the enhancement would result in physical injury or serious danger to others. The conduct in this case illustrates that the defendant, whatever his age, is unfortunately and regrettably prone to drug addiction. And when he is ... under the influence of drugs, which appears to have been the case in this case, when he committed the offense conduct, he is capable of, and in fact, in this case has committed grave act of senseless violence against innocent victims. People just sitting in their car and he opened fire against them and shot both of them."

The minute order from the sentencing proceeding states, "Enhancements are stayed but may be deemed stricken pursuant to PC1385(c)." Similarly, the abstract of judgment notes, "Sentenced for a total indeterminate term of: 75 years to life. Enhancements are stayed but may be deemed stricken pursuant to PC1385(c)."

19

B

*Analysis*

Section 1385, subdivision (c)(1) states, "Notwithstanding any other law, the court *shall dismiss* an enhancement if it is in the furtherance of justice to do so." (Italics added.) The statute's plain language mandates dismissal of the enhancements and not imposition of a stay. "[S]triking an enhancement," e.g. dismissing the enhancement, "and staying an enhancement are not the same thing." (*People v. Eberhardt* (1986) 186 Cal.App.3d 1112, 1122–1123.) " 'The difference between "striking" and "staying" is not a mere linguistic difference. ... [S]triking the enhancements [implies] a finding that they were insupportable in the interests of justice or would have required mitigating factors. (§§ 1385, 1170.1, subd. (g).) The decision to "stay" is, on the other hand, a sentencing method; that is, a sentence may be "imposed" or "stayed." ' " (*Eberhardt,* at p. 1123.)

Here, the trial court stated explicitly it was striking all enhancements except for the firearm enhancement on count 5, but then went on to state "the language" it was using would be that the enhancements "are stayed but may be deemed stricken pursuant to 1385(c)." The trial court did not explain why it attempted to also stay the stricken enhancements. We agree with the parties that despite the court's confusion as to how to word its judgment, the trial court's statements make clear it intended to strike all the enhancements except the firearm enhancement on count 5. Because this intention is clear, we modify the judgment to reflect that the remaining enhancements are stricken. (See *People v. Mendoza* (2016) 5 Cal.App.5th 535, 539 ["When a trial court's intention is clear, we 'need not remand for resentencing, but can modify the judgment to reflect the intent of the trial court.' "]; see also *People v. Gutierrez* (1996) 46 Cal.App.4th 804, 816 [when a trial court's intention is

20

clear, we "need not remand for resentencing, but can modify the judgment to reflect the intent of the trial court"] and § 1260.)

## DISPOSITION

The judgment is modified to strike (1) the personal infliction of great bodily injury enhancements (§ 12022.7, subd. (a)) attached to counts 1, 3, 4, 5 and 6; (2) the personal discharge of a firearm causing great bodily injury enhancements (§ 12022.53, subd. (d)) attached to counts 1 and 6; (3) the personal use of a firearm enhancements (§ 12022.5, subd. (a)) attached to counts 3 and 4; and (4) the prior serious felony convictions enhancements (§ 667, subd. (a)(1)).  The trial court is directed to prepare an amended abstract of judgment reflecting this modification and to forward a certified copy to the Department of Corrections and Rehabilitation.  As modified, the judgment is affirmed.


McCONNELL, P. J.

WE CONCUR:


IRION, J.


KELETY, J.

21